STATE, EX REL. TEST *v.* STEINWEDEL ET AL.

[No. 26,038.   Filed April 27, 1932.]

*Montgomery & Montgomery, James M. Ogden,* Attorney-General, and *Joseph W. Hutchinson,* Deputy Attorney-General, for appellant.

*Thomas H. Branaman* and *Coulter M. Montgomery,* for appellees.

TREANOR, J.—This is an appeal from the action of the lower court in sustaining the demurrers of appellees, who were auditor and members of the county council of Jackson County, to appellant's complaint for mandate to require the auditor "to call a special session of the County Council for the purpose of appropriating the sum of $630.00 to pay the salary of Relator as attendance officer for the City of Seymour, Indiana, for the school year of 1930-1931" and to command "the other defendants . . . to meet at the call of said County Auditor and appropriate the sum of $630.00 to pay the salary of the Relator as such attendance officer for said school year."

Among other things, appellant alleged in her complaint that the city of Seymour is a municipal corporation in Jackson County, Indiana; that it has a school enumeration of more than 2,000 children of school age; that said city constitutes a separate attendance district; that the salary of such attendance officer had been fixed by the board of school trustees of the city of Seymour at $3.50 per day for 180 days and that the sum of $630 will be required to pay her salary as such attendance officer; that she has, since the beginning of the school year, performed the duties of attendance officer for the city of Seymour and intends to continue to perform such duties during the remainder of the year; that there were sufficient funds in the treasury of said county that were available and could have been appropriated for this

purpose, but that the county council, at its annual meeting, failed and refused, and has ever since refused, to appropriate funds necessary to pay such salary.

Demurrers were filed by both the county auditor and the members of the county council, the ground of each demurrer being that the complaint did not state facts sufficient to constitute a cause of action. With each demurrer the same memorandum was filed, which made the following points: (1) The statute upon which the relatrix' cause of action is founded (Acts 1921, ch. 132, p. 337, §6448 *et seq*. Burns 1926) is unconstitutional.

(2) By the terms of the act itself, the duty of paying the salary of relatrix devolves upon the school city of Seymour.

(3) That no facts are alleged to show that relatrix had filed an itemized statement as provided for by §2 of the act.

(4) Facts are not alleged to show that there are any funds available for appropriation to pay claim of relatrix.

We shall consider first the point that the act of the General Assembly, upon which relatrix' claim rests, is unconstitutional.

Appellant-relatrix urges that appellees should not be permitted to interpose the defense that the act relied upon by relatrix is unconstitutional and calls our attention to the rule of law that a public officer whose duties are of a ministerial character cannot question the constitutionality of a statute as a defense to a mandamus proceeding to compel him to perform some official duty. (Appellant's brief, p. 13.) Appellant cites numerous authorities but does not cite any Indiana case which supports the foregoing rule. She does, however, refer to *State, ex rel.*, v. *Winterrowd* (1910), 174 Ind. 592, 91 N. E. 956, 92 N. E. 650, 30 L. R. A. (N. S.) 886, as recognizing the "principle for which we (appellant) are

contending." In that case, the relator brought an action of mandate to compel a city building inspector to issue a building permit for a building to be constructed in accordance with plans complying with an ordinance of the city. The relator's complaint alleged that the building inspector was refusing the permit for the reason that the plans did not comply with an act of the General Assembly and further alleged that the act was unconstitutional. The trial court sustained a demurrer to the relator's complaint and this court affirmed the judgment of the trial court. A petition for a rehearing was denied, with an opinion, which contained the following statement: "In the citation of authorities, counsel fail to distinguish between cases in which the respondent asserts the unconstitutionality of a statute in excuse of nonperformance of its requirements, and those in which the relator seeks to compel performance of an act which the law prohibits. This court has permitted respondent in mandamus proceedings to raise constitutional questions, although it does not well accord with public policy to allow ministerial officers to obstruct the administration of law, by refusing to execute such statutes as they deem invalid, and many courts decline to tolerate such practice. It is quite a different thing to hold that such an officer must, at his peril, disobey the specific commands of a law duly enacted and promulgated, at the behest of any one who may be of the opinion that such law is unconstitutional. The proper function of mandamus is to enforce obedience to law, and not disobedience, or even to litigate its validity."

It is evident from the foregoing excerpt that this court was recognizing a distinction between a case in which the relator is asking a court to declare a statute unconstitutional in order to clear the way for mandatory relief under another statute, the constitutionality of which is not assailed, and a case, such

as the one at bar, in which a ministerial officer is interposing against an action for mandate the defense of unconstitutionality of the very statute by virtue of which the relator demands performance of the duty in question. The opinion conceded that, in the latter case, this court had allowed the defense. The case of *State, ex rel.*, v. *Wheaton* (1923), 193 Ind. 30, 138 N. E. 820, is in harmony with that distinction, but in *Jackson, Sec.*, v. *State, ex rel.* (1923), 194 Ind. 248, 142 N. E. 423, this court affirmed a judgment of mandate against the Secretary of State by which judgment he was required to perform a duty imposed by an act of the General Assembly of 1921 (Acts 1921 p. 579), and, in order to affirm that judgment, it was necessary for this court to declare unconstitutional an act of the General Assembly of 1923 which purported to amend the act of 1921. We think the decision inferentially committed this court more strongly to the rule that a ministerial official who is a defendant in an action for mandate may interpose the unconstitutionality of a statute in excuse of nonperformance of a duty enjoined by that statute. In the recent case of *State, ex rel.*, v. *Abel, Treas.* (1931), *ante* 44, 178 N. E. 683, the relator sought by action of mandate to compel a city treasurer to pay a warrant and the treasurer filed an affirmative answer setting up the invalidity of the ordinance under which the warrant was drawn. This court held that such answer "rightfully challenged the legal right of appellant to have the warrant paid." The reasoning of the court, as indicated by the following, applies to the question before us: "The clear legal right of relator to have the warrant paid depended upon the validity of the ordinance. If the ordinance was invalid, the warrant was drawn without authority of law, and mandamus would not lie to coerce the city treasurer to pay it."

The cases of other jurisdictions reveal a sharp conflict

of authority respecting the rule, and both logic and convenience are invoked to support each line of authority. We think the rule is supported by the logic of our traditional legal concepts and rules which are pertinent to the question. It is axiomatic with us that a legislative enactment which conflicts with the Constitution is void and legally binds no one. Justice Field of the United States Supreme Court accurately phrased our traditional concept of an unconstitutional statute. He stated it as follows: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton* v. *Shelby County* (1886), 118 U. S. 425, 442, 6 Sup. Ct. 1121, 1125, 30 L. Ed. 178, 186.

The logic of the foregoing, as applied to the rule in question, seems to be stated aptly by the Supreme Court of Utah as follows: "When the law requires an officer to act, although the act be ministerial merely, if he is directly responsible for his official acts he may refuse to act, if in his judgment the law is in conflict with some constitutional provision, and, in case proceedings are instituted to coerce him, he may set up the supposed defect in the law as a defense. No other conclusion is permissible if the Constitution is the supreme law, and if legislative acts in conflict therewith are not merely voidable but are absolutely void. . . .

"If the legislative enactment under which he is required to act is in conflict with the Constitution, the Constitution and not the enactment prevails, and the officer must obey the Constitution or violate his oath of office." *State, ex rel.*, v. *Canland* (1909), 36 Utah 406, 417, 104 Pac. 285, 24 L. R. A. (N. S.) 1260, 140 Am. St. 834.

It does not follow from the reasoning of the Utah

court that good faith action, taken under an unconstitutional statute is devoid of legal consequences; but these consequences cannot be attributed properly to any legal efficacy of the unconstitutional statute, but rather to the policy of the law to protect persons who act in good faith under "color of right" or "color of law."

We cannot give decisive weight to the argument of "convenience," or "public policy," as we have no reliable source of information from which to accurately evaluate the relative advantages or disadvantages of allowing a ministerial officer to use the defense of unconstitutionality in a mandamus proceeding. We believe that "it may not be a wise thing, as a rule, for subordinate executive or ministerial officers to undertake to pass upon the constitutionality of legislation prescribing their duties, and to disregard it if in their judgment it is invalid"; (Fields, J., in *Huntington* v. *Worthen* [1887], 120 U. S. 97, 7 Sup. Ct. 469, 30 L. Ed. 588). We know, however, that public officials usually act, or refuse to act, only after advising with competent legal counsel; and we think that a positive rule of law should not rest upon the assumption that officials will dishonestly or without reason rely upon unconstitutionality as an excuse for nonperformance of a duty. At any rate, we see no reason to assume that dishonest or uninformed officials will rely upon "unconstitutionality" rather than "interpretation" as an excuse for nonperformance of duties; consequently, to be consistent, we should allow a ministerial officer to rely upon both excuses, or not allow him to rely upon either. If we adopt the latter alternative, we shall deprive public officials of any defense to actions for mandate in most cases. On the other hand, allowing the defense of unconstitutionality furnishes a direct and simple method of determining the constitutionality of a class of statutes which usually affect the public interest

as well as the private interests of many individuals. Of course, the refusal to act until a court has declared the statute constitutional interferes with the administration of public business; but so does a suit by a taxpayer to enjoin action by public officials, and in many cases refusal by a court to determine the constitutional question in an action for mandate will result in a second suit to enjoin another public official. This case well illustrates that possibility. If we should refuse to decide the constitutional question and send the case back with instructions which require the trial court to grant the mandatory relief, it is quite obvious that some interested party will bring suit against the county treasurer to prevent payment of the claim. In short, the probable result of leaving the constitutional question open will subject the county, through its officers, to a second suit and to cause further interference with the administration of public business.

We hold that the appellees, under their demurrers, were entitled to present the question of the constitutionality of the statute (Acts 1921, ch. 132, p. 337, §6448 *et seq.* Burns 1926, *supra*), relied upon by relator, and we shall first consider the point that the act violates §19 of Art. 4 of the Indiana Constitution, which section is as follows: "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

The title of the act reads thus: "An act concerning the school attendance and the employment of minors, fixing penalties and repealing conflicting laws."

Appellees insist that the body of the act embraces two subjects, "Compulsory School Attendance" and

"Child Labor,"—"two subjects having no legal connection with each other." There is no doubt that the title of the act adequately expresses the matters contained in the body of the act; and if two subjects are embraced in the act and both are expressed in the title, it follows that the entire act is void. (*Jackson, Sec.,* v. *State, ex rel. supra.*) This must be true because of "the impossibility of choosing between the two, and holding the act valid as to the one and void as to the other." 1 Cooley, Constitutional Limitations (8th ed.) p. 308, and cases cited. But we believe that the act does not embrace more than one subject. The Constitution does not define "one subject" and there is no specific rule of law which affords any help in determining whether a particular act of the General Assembly contains one or more than one subject, and there is no absolute test of general applicability either in fact or law. The earliest case involving §19, Art. 4, was *Indiana Central R. Co.* v. *Potts* (1856), 7 Ind. 681. We quote the following from the opinion in that case: And we lay down the proposition— "3. That that subject must be reasonably particular and not too general; for otherwise the object of the constitutional provision would be wholly thwarted. A part of the object of that provision was that the title should indicate the character of the sections of the act. To effect this object, the title must be reasonably particular; and, to secure such particularity, as a general rule, titles should not express ends, objects, or purposes to be accomplished, but rather means by which ends are to be accomplished."

This early case recognized that the only test which this court can apply is the indefinite one of "reasonableness," a standard and not a specific rule of law. Section 19, Art. 4 does not by restricting the contents of an "act" to one subject, contem-

plate a metaphysical singleness of idea or thing, but rather that there must be some rational unity between the matters embraced in the act, the unity being found in the general purpose of the act and the practical problems of efficient administration. It is hardly necessary to suggest that matters which ordinarily would not be thought to have any common features or characteristics might, for purposes of legislative treatment, be grouped together and treated as one subject. For purposes of legislation, "subjects" are not absolute existences to be discovered by some sort of *a priori* reasoning, but are the result of classification for convenience of treatment and for greater effectiveness in attaining the general purpose of the particular legislative act. And if, from the standpoint of legislative treatment, there is any reasonable basis for the grouping together in one "act" of various matters, this court cannot say that such matters constitute more than one subject. "The Constitution does not assume to divide the general scope of legislation, and classify the parts under particular heads or subjects, but, of necessity, has left that power to be exercised by the legislature, as it, in its wisdom and discretion, shall deem proper. . . . The purposes of the provision, in view of the evils intended to be guarded against, can only be effected by requiring that the subject expressed should be reasonably specific, or, in other words, should be such as to indicate some particular branch of legislation, as a head under which the particular provisions of the act might reasonably be looked for. With this restriction, the subject of an act may be enlarged or restricted at the will of the legislature, and the subject must be determined by reference to the language used in the title." *Bright* v. *McCullough, Treas.* (1866), 27 Ind. 223, 226, 227.

An examination of the body of the act discloses that

two immediate objects, one to keep minors in school until they have reached certain ages or have completed specified amounts of school work, and the other to prevent employment of minors during that period of their lives when employment will most seriously interfere with their school attendance and injuriously affect their health. It is apparent that the problems of school attendance and employment of minors are intimately connected; and both are vitally related to the ultimate objective of promoting the mental and physical welfare of minors. While the "object" of an act may not be interchangeable with "subject," still we think the object of an act must be considered in determining whether matters embraced in the act may be reasonably treated as "one subject." We think that *minors* might be the subject of a legislative act which could embrace a great number of relationships and interests peculiarly affected by legal minority, among which would be included "school attendance" and "employment," and the act in question cannot be said to embrace two subjects merely because it includes only two of the many interests or relationships affected by legal minority, all of which might be treated in one act with the title: "An act concerning minors." In *Bright* v. *McCullough, Treas., supra,* the title of the act was: "An act providing for the election or appointment of supervisors of highways, and prescribing certain of their duties, and those of county and township officers, in relation thereto." The court concluded that "the subject of legislation expressed by its (the title's) language is 'highways,' limited, perhaps, by the particular specifications, to provisions for the election or appointment of supervisors, and their duties, and the duties of county and township officers, in relation to highways."

"The words, 'an act concerning highways,' would express but a single subject, and yet would constitute a

comprehensive title, under which almost any desired provision relating to highways might be enacted, and every effort to express in the title the details of the act would *only tend to limit the subject."* (Our italics.) *Bright* v. *McCullough, Treas., supra,* p. 227.

So we can say that "an act concerning minors" would express but a single subject and yet would constitute a comprehensive title under which almost any desired provision relating to minors might be enacted; and, if the legislative act in question had borne that title, the provisions respecting school attendance and employment would have been sufficiently expressed by the title.

"Generality of a title is not objectionable if it is not made a cover to legislation incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection." *Sarlls, City Clerk,* v. *State, ex rel.* (1929), 201 Ind. 88, 102, 166 N. E. 270, 67 A. L. R. 718. But, since the title of the act is, in effect, "An act concerning minors, regulating the attendance and employment thereof" (Appellant's brief, p. 32), the title is limited to expressing the subject of school attendance and employment of minors; and the subject, as indicated by the provisions of the act, fairly may be said to be school attendance and employment of minors. There are provisions affecting parents, school officials and employers that cover matters which are not elements of the subject but are "matters properly connected therewith." §19, Art. 4, Indiana Constitution. We conclude that the act does not violate §19, Art. 4 of the Indiana Constitution.

Points (2) and (4) in appellees' memoranda in support of the demurrers to relatrix' complaint rest upon the proposition that "to take the property, through taxation, of the people of Jackson County to pay a burden solely of the City of Seymour,

is a confiscation of property and in violation of §21 of the Bill of Rights of the Constitution of Indiana." But, in *Hanly* v. *Sims* (1910), 175 Ind. 345, 353, 93 N. E. 228, 94 N. E. 401, this court declared that §21 of the Bill of Rights "was not intended as a restriction upon the State's taxing power, but relates only to the exercise of the power of eminent domain." The opinion in that case quoted with approval that "it is only the taking of specific pieces of the property of an individual, by virtue of the right of eminent domain, that is prohibited by the Constitution, without special compensation." *City of Aurora* v. *West* (1857), 9 Ind. 74, 83.

Further, we think the act does not compel the "people of Jackson County" considered apart from the people of Seymour to "pay a burden solely of the City of Seymour." The taxpayers of the city of Seymour pay their portion of the county tax, a part of which is used to pay the salary of the county attendance officer as well as the attendance officer for Seymour. We cannot hope for a perfectly equitable distribution of the benefits and burdens of taxation. The school attendance problem of Seymour is a part of the problem of Jackson County, and we think it is immaterial whether the statute provides for payment from county funds of the salaries of a county attendance officer and one or more deputies, or for one county officer and at least one additional officer for each city having a school enumeration of 2,000 or more.

The memoranda in support of the demurrer also makes the point that the act in question violates §1 of Art. 10 of the Indiana Constitution, which requires a "uniform and equal rate of assessment and taxation." This court considered §1, Art. 10, in *Kerr* v. *Perry School Tp.* (1904), 162 Ind. 310, 70 N. E. 246, in connection with a statute which provided that the receiving school corporation to which

pupils should be transferred was to be paid the *per capita* cost of education in the corporation to which they should be transferred. The following statement from the opinion in that case applies to appellees' contention in this case: "This provision of our fundamental law clearly applies to assessments and taxation, and does not profess to control the expenditure of money arising out of any assessment or taxation of property. It deals with the uniformity and equal rate of assessment and taxation of property within the taxing district or locality in which the particular tax is levied. *Bright* v. *McCullough,* 27 Ind. 223; *Loftin* v. *Citizens Nat. Bank,* 85 Ind. 341; *Board, etc.,* v. *State, ex rel.,* 147 Ind. 476, 492, and cases cited; *Kent* v. *Town of Kentland,* 62 Ind. 291; *Robinson* v. *Schenck,* 102 Ind. 307.

"Appellee insists that taxes are not equal and uniform when all persons within the district or locality do not share equally in the benefits derived therefrom. But benefits derived from taxes levied, and the uniformity of assessment and taxation within the particular district or locality, are entirely different questions."

We find no merit in point 6 of appellees' memoranda which urges that the act requires relatrix' salary to be paid out of funds to be raised by a tax in the school city of Seymour. It is clear from the act that it requires relatrix' salary to be paid from county funds. The officers for whom salaries are "otherwise provided for in this act" are the "additional officers" in cities having a school enumeration of 2,000 or more or the attendance officer who may be appointed in any city or town having a school enumeration of less than 2,000. §1, Acts 1921, ch. 132, p. 337, §6448 Burns 1926.

It was not necessary, as urged in point 7 of appellees' memoranda, that appellant allege facts to show that she had filed an "itemized statement," or that "she has a

valid liquidated claim." The statute authorizes ▮ the school board to fix within certain limits the amount of the salary for the attendance officer and then provides that "the county council shall appropriate, and the board of county commissioners shall allow, the funds necessary to make such payments." Acts 1921 p. 337, §6449 Burns 1926, *supra*. The school board fixed the amount of the salary for the year 1930-1931 and notified the county council and it was then the council's imperative duty to make the appropriation. The General Assembly may decide that certain activities of the business of government are so important that the supplying of funds to carry on these activities must not be left to the discretion of local authorities. "The operation of the business of government as provided by law is a public necessity. The business of public education cannot be determined in the case at bar to be of greater or less necessity than the business of public highways, the business of raising public revenue, or of any other particular public business, but, we may, and do, determine, for the purpose of deciding this case, that the business of public education, as provided by the Constitution and statutes, is equal to and not inferior to any other business of the government. *State, ex rel.*, v. *Board, etc.* (1931), *ante* 23, 178 N. E. 563, 568.

It is true that the "county council act" limits appropriations at special meetings to emergency appropriations; and we assume that such act must be ▮ followed in all cases where the county council may, in its discretion, refuse to make an appropriation for payment of a claim. But the General Assembly has the power to require a county council to make specific appropriations without regard to usual procedure and, in such cases, the General Assembly, in effect, makes the appropriation, and the act of the coun-

cil amounts merely to registering in proper form the will of the General Assembly. In *State, ex rel.,* v. *Meeker* (1914), 182 Ind. 240, 105 N. E. 906, this court made the following statement: "Although it is true that the county council alone is authorized to make appropriations of money to be paid out of the county treasury (§5932 Burns 1914, Acts 1899 p. 343), that fact does not prohibit the legislature from requiring the council, under stated conditions, to make such an appropriation and without reference to the usual procedure under the county council act. The members of such council are officers of a political subdivision of the State and are subject to the mandate of the sovereign power."

In the case at bar, the action of the school board fixed the amount to be appropriated and the statute placed an absolute duty upon the county council to appropriate that sum at its regular 1930 September meeting. Having adjourned without making the appropriation, the council was still under the legal duty to make such appropriation and this action for mandate was the proper and necessary procedure to compel performance of the duty.

We hold that relatrix' complaint stated facts sufficient to constitute a cause of action against the defendant members of the county council of Jackson County and against the defendant auditor of Jackson County. Judgment reversed, with instructions to overrule the demurrers to relatrix' complaint and for further proceedings not inconsistent with this opinion.