**Kathy DAGUE, individually and as Special Administratrix of the Estate of John R. Dague, Deceased, Plaintiff,**

v.

**PIPER AIRCRAFT CORPORATION, Defendant.**

No. S 79–293.

United States District Court, N. D. Indiana, South Bend Division.

May 27, 1980.

26. *See* response of Petitioner Valencia.

Frank E. Tolbert, Logansport, Ind., John E. Doran, South Bend, Ind. for plaintiff.

Aribert L. Young, Indianapolis, Ind., Timothy W. Woods, South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The salient facts that are necessary to determine the defendant's Motion for Summary Judgment are simple and straight-

forward. The plaintiff's decedent was severely injured when a Piper Pawnee PA 25–235, serial number 25–3263 and FAA identification number N 7317Z crashed near Logansport, Indiana on July 7, 1978. As a direct result of injuries sustained in that crash John R. Dague died on September 5, 1978. This lawsuit was filed to recovery damages for his wrongful death by the administratrix of his estate on ·October 31, 1979. It is also undisputed that the manufacturer of the airplane above described was the defendant Piper Aircraft Corporation. · The aircraft is alleged to be defective, which defect was the cause of · the injuries sustained by John R. Dague. It is also undisputed that this aircraft was manufactured by Piper in the year 1965 and was placed in the stream of commerce by that manufacturer about the 26th day of March, 1965.

## I.

In its motion for summary judgment the defendant, Piper Aircraft Corporation, contends that this case is barred by Section 5 of the recently enacted Indiana Product Liability Act, IC 34–4–20A–5 (1979 Supp.) which provides:

> "This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5, any product liability action must be commenced within two [2] years after the cause of action accrues or within ten [10] years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight [8] years but not more than ten [10] years after that initial delivery, the action may be commenced at any time within two [2] years after the cause of action accrues. [IC 33–1–1.5–5, as added by Acts 1978, P.L. 141, § 28, p. 1298.]"

In this regard there is at present only one decided case which mentions this statute. In *Amermac, Inc. v. Gordon*, Ind.App., 394 N.E.2d 946 (1979), at page 948, there is footnote 4 which states:

> "Although not deciding the issue, we note that Indiana's recently enacted Products

Liability Act, Ind.Code (1978 Supp.) 33–1–1.5–1 to –8 (Acts 1978, P.L. 141, Sec. 28), may shed light upon the Legislature's intentions as to the applicable statute of limitations in these situations. First, although somewhat confusingly drafted, see *Vargo, Survey of Recent Developments in Products Liability*, 12 Ind.L.Rev. 227, 249 (1979), the Legislature clearly intended to place an *absolute* time limit on liability for a product's defects, including actions in negligence. Ind.Code (1978 Supp.) 33–1–1.5–1. This policy would be defeated by applying a tort limitation which would not begin to run until *after* an injury, no matter when that injury occurred. Second, the Legislature specifically differentiated between actions in tort (negligence and strict liability) and warranty actions. Ind.Code (1978 Supp.) 33–1–1.5–1. This, too, would seem to indicate that a contract statute of limitations would apply in actions for personal injuries due to a breach of implied warranty."

While that footnote is dicta in the *Amermac* case, it is of very considerable significance. It also cites approvingly the article authored by John S. Vargo and Jordan H. Leidman in 12 Ind.L.Rev. 227–250 (1979). Significantly, that article states:

> "Reference to House Bill No. 1258 reveals language similar to the enacted bill, with the exception that the two limitation provisions are joined with the word 'and' rather than 'or.' Although the legislature in conference committee might have chosen a completely opposite course to that introduced in the House, such an analysis would find the clause following, 'initial user or consumer,' to be mere surplusage. This clause states: '[E]xcept that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after that initial delivery, the action may be commenced at any · time within two (2) years after the cause of action accrues.' Unless the ten-year period was intended to be an outer cutoff, there would be no need to state again that the plaintiff has two years in which

to bring his action if his injury occurs during the ninth or tenth year of the life of the product. The purpose of this clause is clearly to insure that all plaintiffs injured within ten years of delivery will, nevertheless, have a full two years to file a claim."

■ It is basic that all statutes should be read where possible to give effect to the intent of the legislature. In *Loza v. State*, 263 Ind. 124, 325 N.E.2d 173, 176 (1975), the Supreme Court of Indiana stated:

"This statute has not been previously interpreted by our courts, and our research discloses no interpretation of any similar statute by any sister state. We are controlled, therefore, by the express language of the statute itself and applicable rules of statutory construction, the objective of such rules being to determine and effect the intent of the Legislature. (citations omitted) However, in so doing, we are also required to prevent absurdity and hardship and to favor public convenience." (citation omitted)

In the same vein see *Thompson v. Thompson*, 259 Ind. 266, 286 N.E.2d 657 (1972); *Allen County Department of Public Welfare v. Ball Memorial Hospital Ass'n.*, 253 Ind. 179, 252 N.E.2d 424 (1969); *Town of Argos v. Ritz Craft Realty, Inc.*, 250 Ind. 562, 238 N.E.2d 14 (1968); and *Combs v. Cook*, 238 Ind. 392, 151 N.E.2d 144 (1958).

The issues involved with regard to the application of this particular statute of limitations and other related issues have been thoroughly and completely briefed by very able counsel on both sides and have been the subject of extensive oral argument which occurred on April 25, 1980 and supplement briefing since that time.

For convenience this Court is attaching hereto and incorporating herein as Appendix A the full text of the recently enacted Indiana Product Liability Act which became effective on the 1st day of June, 1978.

■ It is beyond dispute that the substantive law of Indiana applies to this case which is based on diversity of citizenship under Title 28, United States Code, Section 1332, and under the teaching of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This includes any applicable statute of limitation. It is also beyond dispute that the statute of limitations can be raised appropriately under a Rule 56 Motion for Summary Judgment. See *Horvath v. Davidson*, 148 Ind.App. 203, 264 N.E.2d 328 (1970), and the cases therein cited.

■ In an action based on diversity jurisdiction a United States District Court is generally required to apply the substantive law, including the statute of limitations, of that state where that court sits. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Kalmich v. Bruno*, 553 F.2d 549 (7th Cir. 1977), *cert. den.*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300.

In examining the Indiana Product Liability Act and particularly Section 5 thereof, this Court is limited to the language of the Act itself. There have been presented to the Court certain minutes of certain meetings held by a select committee of the Indiana Legislative Counsel held at the request of the Indiana General Assembly. While these may be interesting they are not legitimate and bona fide legislative history materials. Generally, and unfortunately, the kind of legislative materials including the record of debates and committee reports which are generally available to this Court in regard to enactments by the Congress of the United States are not generally available with reference to enactments by the General Assembly of Indiana. Thus, the Court must look to the language of the total statute itself.

This Court is most familiar with the common law development of so-called products liability law in Indiana. See *Cornette v. Searjeant Metal Products, Inc.*, 147 Ind. App. 46, 258 N.E.2d 652 (1970), and *Perfection Paint & Color Co. v. Konduris*, 147 Ind.App. 106, 258 N.E.2d 681 (1970).

■ Certainly the whole of the Indiana Product Liability Act should be examined in the light of the Indiana common law background in order to determine the basic leg-

islative intent of the total enactment. It is certainly clear that the Indiana General Assembly intended more than a mere codification of prior products liability law in Indiana.

The aircraft here in question had been undisputedly in the stream of commerce more than 13 years on July 7, 1978. The only reasonable interpretation that this Court can place on this statute is that the intended ten year period as applied to the facts of this case was intended to be an outer cutoff. A product liability claim does not exist if it did not arise within this ten year period.

The plaintiff's argument in brief deals extensively with the interpretation of the words "and" and "or". Interpreting the statute as the plaintiff here urges would require this Court to treat the last clause of Section 5 of the Indiana Product Liability Act as mere surplusage and to construe the law as not changing previous Indiana statutory and case law whatsoever. It was the clear intent of the Indiana General Assembly to limit in some particular way the effect and scope of the prior Indiana law. It is not for this Court to determine or judge whether that effort was wise. It is for this Court to be bound by that effort as long as this Court can determine the intent of the Indiana General Assembly. To interpret Section 5 as the plaintiff would have it interpreted here would also be to ignore the statement of the Indiana Court of Appeals in the *Amermac* case.

When the entire Indiana Product Liability Act is read the only reasonable interpretation that can be made is that the Indiana General Assembly intended that there be an absolute ten year cutoff for the bringing of product liability actions. Thus, if a product did not fail within ten years from the date that it was delivered to the initial user or consumer a products liability claim could not and did not exist.

The bottom line teaching of the Indiana Court of Appeals in *Sekerez v. Youngstown Sheet and Tube Co.*, 166 Ind.App. 563, 337 N.E.2d 521 (1975), is not contrary to the result announced here. In *Sekerez* the court stated that "unless a different construction is necessary to effectuate the intention of the Legislature, words and phrases contained in a statute should be taken in their plain, ordinary and usual sense." 337 N.E.2d 524. The only construction which is consistent with the clear legislative intent is the constructions imposing an absolute time limit upon the bringing of products liability claims.

The reading given here to this Indiana statute is in accord with the reading given by the federal court of a similar Rhode Island statute in *Cadieux v. International Telephone & Telegraph Corp.*, 593 F.2d 142 (1st Cir. 1979):

"We do not read this amendment as creating a new ten year period to bring liability suits. Rather, the amendment clearly provides that the ten year period after the sale of the offending product is an additional limit on suits brought within the existing statutes that relate to the date of the injury. If R.I.G.L. § 9–1–13 demonstrates solicitude for any group, it is for the manufacturers who, prior to July 1, 1978, had no statutory protection from suit that was related to the date of original sale of a product." Id. at 144–145.

This Court is also in accord with state court decisions reading similar statutes. See *O'Connor v. Altus*, 67 N.J. 106, 335 A.2d 545 (1973), *Comptroller v. King*, 217 Va. 751, 232 S.E.2d 895 (1977), *Diamond v. Squibb*, Fla.App., 366 So.2d 1221 (1979). See also, *Grissom v. North American Aviation, Inc.*, 326 F.Supp. 465 (M.D.Fla.1971).

During argument in this case the plaintiff asserted, apparently for the first time, that the provisions of IC 34–1–2–6 tolled the statute of limitation. IC 34–1–2–6 states:

"(a) The time during which the defendant is a nonresident of the state shall not be computed in any of the periods of limitation except during such time as the defendant by law maintains in the state of Indiana an agent for service of process or other person, who, under the laws of

the state of Indiana, may be served with process as agent for the defendant.

(b) When a cause of action has arisen without this state against a nonresident defendant, and the defendant does not maintain any agent in the state of Indiana for service of process or other person who, under the laws of this state, could be served with process as agent for the defendant and such cause has been fully barred by the laws both of the place where the defendant resides and of the place where the cause of action arose, such bar shall be a defense here.

(c) Nothing in this section shall be deemed to amend or alter present laws relating to the application of various statutes of limitations to persons under legal disabilities or to members of the armed services of the United States."

It is well settled that so long as there is an agent for the service of process the aforesaid statute is not applicable. In *American States Insurance Co. v. Williams*, 151 Ind.App. 99, 278 N.E.2d 295 (1972), the plaintiff there attempted to argue that the statute of limitations was tolled because the defendant was a non-resident of Indiana. The Court of Appeals held:

"... Appellants have exhibited no foundation for a tolling of the statute. William Irwin was at all times amenable to service of process either by service within this state or by service upon the Secretary of the State of Indiana under the Non-Resident Motorists Statute, Ind.Ann. Stat. § 47–1043 (Burns 1965 Repl.) I.C. 1971 9–3–2–1. The Progressive Steel Workers of Hammond, Indiana, Inc., were also at all times subject to service of process in Indiana. Therefore, there was no ground for the tolling of the statute of limitations in this case." 278 N.E.2d at 301.

Thus, so long as there is a statutory agent for the service of process, IC 34–1–2–6 is not applicable. Non-resident corporations are subject to the provisions of IC 23–1–2–5 which establishes the Secretary of State of the State of Indiana as a statutory agent for the service of process. IC 23–1–2–5 provides in pertinent part as follows:

"If and when the corporation shall not have available in this State its resident agent as hereinbefore provided, service of legal process upon such corporation, in all instances in which such service could be made on such agent if available, may be had by serving the same upon the Secretary of State upon the same terms and provisions as provided for by § 61[23–1–11–6] hereof in the case of service of legal process on a foreign corporation which is admitted to do business but does not have a resident agent in this State."

It is thus well settled that the provisions of IC 34–1–2–6 would in no way affect this action and would not be a basis for tolling the statute of limitations in Section 5 of the Indiana Product Liability Act.

## II.

The plaintiff has also lodged a strong constitutional challenge to Section 5 of the Indiana Product Liability Act. Certainly in this area of state legislative authority there is a strong presumption of constitutionality. *Struble v. Elkhart County Park & Recreation Bd.*, Ind.App., 373 N.E.2d 906 (1978); *Roeschelin v. Thomas*, 258 Ind. 16, 280 N.E.2d 581 (1972); and *Sidle v. Majors*, 264 Ind. 206, 341 N.E.2d 763 (1976).

### A.

Since there is no fundamental "right" to bring a common law action and no suspect class involved in the present case, the standard of judicial review is whether the classification set up by the statute is arbitrary or unreasonable and whether a fair and substantial relation exists between the classification and purpose of the legislation creating it. *Sidle, supra*, 341 N.E.2d at 767. A classification made by the Legislature will be sustained unless it is so manifestly and unmistakably arbitrary as to leave no room upon which reasonable minds may differ. *Martin v. Loula*, 208 Ind. 346, 194 N.E. 178 (1935); *Chaffin v. Nicosia*, 261 Ind. 698, 310 N.E.2d 867 (1974). The Court is bound to accept as shown any conceivable state of facts which would jus-

tify the classification. *Martin v. State*, 262 Ind. 232, 317 N.E.2d 430 (1974), *cert. den.*, 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 841; *Baldwin v. State*, 194 Ind. 303, 141 N.E. 343 (1923).

■ Plaintiff argues that the limitations provision sets up two arbitrary classifications, the first between third-party owners of products and manufacturers of these products and the second between consumers injured by older products and those injured by newer products. Neither classification is arbitrary or unreasonable.

The Indiana Product Liability Act treats third-party owners and manufacturers or retailers or anyone else equally. No product liability action as that is broadly defined in the act may be brought against anyone for an injury arising more than ten years after the product is delivered. An action could conceivably be brought against a third-party owner of a product, however, for that person's own negligence unrelated to the product. Using the example given by plaintiff at page 16 of her brief, if the late John Dague had had a passenger with him, he could have been sued for possible wanton and wilful misconduct in flying into the trees. No one, however, could have brought a "product liability action" against him. The result can hardly be described as arbitrary or unjust.

Furthermore, the issue raised by plaintiff is obviated by the Act itself. Section 6 of the Act allows an action for indemnity against "any other person whose actual fault caused the product to be defective".

In any event, to the extent that manufacturers are singled out for protection or consumers of older products are unprotected, such classifications are reasonable and rational. The Indiana Legislature was particularly concerned about the ever increasing number of products liability claims. The Legislature's rational response was to limit products liability claims by saying, in effect, that after ten years, one cannot blame a product for any injury occurring after that period. Such action should be seen as a reasonable legislative response to what the Legislature perceived to be a pressing prob-

lem. The Supreme Court of Indiana in *Sidle, supra*, 341 N.E.2d at 772, has already clearly recognized that the protection of liability insurance companies is a legitimate legislative concern. Additionally, making such insurance available also serves a broad public purpose by providing a source of funds for recovery which might not otherwise be available. It also ultimately helps hold down the "seller's" business costs and, thus, the product cost to the public.

Even if it could be said that the Act is not the best means of accomplishing the Legislature's objective, this legislation is clearly not so manifestly and unmistakably arbitrary as to leave no room upon which reasonable minds may differ. Legislative judgment must be reserved to the Indiana Legislature.

■ Plaintiff's argument is premised upon the false notion that the Indiana Legislature is powerless to change the common law. Our Legislature clearly has the power to modify or abolish common law rights and remedies. A quotation from *Sidle, supra*, 341 N.E.2d at 774, which was taken from the case of *Gallegher v. Davis*, 7 W.W.Harr. 380, 183 A. 620 (Del.Super.1936), underscores this point:

"But no one has a vested interest in any rule of the common law. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, within constitutional limits, may be changed at the will of the legislature. The great office of statutes is to remedy defects in the common law as they develop, and to adopt it to the change of time and circumstance. (Citations omitted) Negligence is merely the disregard of some duty imposed by law; and the nature and extent of the duty may be modified by legislation, with a corresponding change in the test of negligence, (Citations omitted) and, as said by the same court with respect to the Fourteenth Amendment, in *Silver v. Silver, supra*, when that case was before it (280 U.S. 117, 50 S.Ct. 57, 58, 74 L.Ed. 221, 65

A.L.R. 939), 'We need not * * * elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.' " 341 N.E.2d 744.

In this case, the Legislature has declared that after a product is 10 years old, a cause of action sounding in product liability will not lie for injuries arising thereafter.

The only case which plaintiff cites, *Chaffin v. Nicosia*, 261 Ind. 698, 310 N.E.2d 867 (1974), in support of the idea that the Legislature is powerless to modify the common law is readily distinguishable. That case dealt with a right to bring a cause of action which had already vested. Plaintiff's cause of action in the present simply never arose. An accurate discussion of that elementary legal concept is found in *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662, 667 (1972), a case involving a ten year contractor's statute, where the court stated:

"Thus Plaintiff's alleged cause of action did not arise until she fell and sustained injury. Of course this was many years after the ten year period fixed by the statute had expired. She claims that the statute, in its application to her, amounts to a deprivation of due process, since, as she expresses it, the statute bars her cause of action before it has arisen. This formulation suggests a misconception of the effect of the statute. It does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has *no* cause of action. The harm that has been done is damnum absque injuria—a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed." (emphasis added)

See also, *Carter v. Hartenstein*, 248 Ark. 1172, 455 S.W.2d 918 (1970), appeal dismissed, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800; *Josephs v. Burns*, 260 Or. 493, 491 P.2d 203 (1971); *Yakima Fruit v. Central Heating*, 81 Wash.2d 528, 503 P.2d 108 (1972); *Pennsylvania Freezer Storage, Inc. v. Armstrong*, 234 Pa.Super. 441, 341 A.2d 184 (1975); *Agus v. Future Chattanooga Development Corp.*, 358 F.Supp. 246 (E.D. Tenn.1973); *Good v. Christensen*, Utah, 527 P.2d 223 (1974); *Smith v. Allen Bradley Co.*, 371 F.Supp. 698 (W.D.Va.1974); *Housing Authority of Town of Lemon v. Leo A. Daly Co.*, 35 Colo.App. 244, 533 P.2d 937 (1975); *Reeves v. Ill. Electric Co.*, 170 Mont. 104, 551 P.2d 647 (1976).

On page 10 of plaintiff's brief filed on March 31, 1980 generally dealing with state statutes dealing with licensed architects and engineers liability and statutes relating to same. This Court has carefully examined each of the cases cited and concludes that none of those cases compel the result which the plaintiff here seeks. Several deal with particular state constitutional prohibition against special legislation. Some deal with legislative attempts to abolish existing common law rights. All recognized that a state legislature may abrogate a claim which has not vested. The common law may be reasonably changed by the Legislature.

### B.

Public Law 141 is entitled "An Act to Amend I.C. 33 Concerning and Court Officers and Product Liability" and consists of 28 sections, section 28 of which contains the provisions regarding product liability. The first 27 sections concern the operation and jurisdiction of the courts in Indiana. Specifically, the Act, among other things, raises the number of judges in Allen Superior Court (§ 4), St. Joseph County Superior Court (§ 5), and Hendricks County Superior Court (§ 10). Plaintiff seeks to have all of Public Law 141 declared null and void on the grounds that the bill contained two unrelated subjects in violation of the provisions of Article IV, Section 19 of the Indiana Constitution.

Plaintiff's argument completely fails to take into account the broad construction which the Indiana courts have given the "one subject" requirement and the purpose of the constitutional provision. The court in *State v. Steinwedel*, 203 Ind. 457, 180 N.E. 865, 868 (1932), after observing that the Indiana Constitution does not define "one subject", and that there is no specific rule of law which defines that term, stated:

"The only test which this Court can apply is the indefinite one of 'reasonableness', a standard and not a specific rule of law. Section 19, Article IV, does not, by restricting the contents of an 'act' to one subject, contemplate a metaphysical singleness of idea or thing, but rather that there must be some rational unity between the matters embraced in the act; the unity being found in the general purpose of the act and the practical problems of efficient administration. It is hardly necessary to suggest that matters which ordinarily would not be thought to have any common features or characteristics might for purposes of legislative treatment be grouped together and treated as one subject. For purposes of legislation, 'subjects' are not absolute existences to be discovered by some sort of a priori reasoning, but are the result of classification for convenience of treatment and for great effectiveness in obtaining the general purpose of the particular legislative act. And if, from the standpoint of legislative treatment, there is *any reasonable basis* for the grouping together in one 'act' of various matters, this court cannot say that such matters constitute more than one subject." [Emphasis added]

The Indiana Supreme Court later held in *Stith Petroleum Co. v. Department of Audit*, 211 Ind. 400, 5 N.E.2d 517, 521 (1937), that:

"Authorities are numerous upon the general subject, covering a wide variety of subjects, and hold that *if there is any reasonable basis* for grouping together in one act various matters of the same nature, *and the public cannot be deceived reasonably thereby, the act is valid.* (Citations omitted)."

Other jurisdictions have also broadly interpreted the "one subject" requirement. See for example, *Robinson v. Hill*, Tex., 507 S.W.2d 521 (1974); and *State v. Waggoner*, 80 Wash.2d 7, 490 P.2d 1308 (1971).

In line with the principle of broad construction and the presumption of constitutionality, the courts in Indiana have often allowed the combination of matters which, on first analysis, might appear diverse. A good illustration and probably the starting point for this line of cases, is the decision of the Supreme Court of Indiana in *Bright v. McCullough*, 27 Ind. 223 (1886). The court in that case considered whether the title of an 1852 act which was entitled "An Act Providing for the Election or Appointment of Supervisors of Highways, and Prescribing Certain of Their Duties, and Those of County and Township Officers, in Relation Thereto", was broad enough to cover the subject matter of the act. The act itself contained provisions calling for, among other things, the election of supervisors and the assessment of a road tax. The court held that the title was broad enough in that the overall subject of the act was "highways". The court stated that:

"The words, 'An Act Concerning Highways', would express but a single subject and yet would constitute a comprehensive title, *under which almost any desired provision relating to highways might be enacted. . .*" [Emphasis added]

In the case of *State v. Steinwedel, supra,* 180 N.E. at 868, the court upheld an act which combined provisions regarding the attendance at school of minors and the employment of minors, stating:

"We think that 'minors' might be the subject of the legislative act which could embrace a great number of relationships and interests peculiarly affected by legal minority, among which would be included 'school attendance' and 'employment', and the act in question cannot be said to embrace two subjects merely because it finds only two of the many interests or relationships affected by legal minority, all of which might be treated in one act

with the title 'An Act Concerning Minors'."

Still another example where the courts have allowed the combination of allegedly diverse subjects is the case of *Ule v. State*, 208 Ind. 255, 194 N.E. 140 (1935). That case involved Chapter 213 of the Acts of 1925 which combined provisions for, among other things the registration and licensing of motor vehicles, their regulation on public highways, the licensing of chauffeurs, the Hit and Run Drivers Act, and garagemen's liens on motor vehicles. Despite the combined elements of securities law, commercial law, criminal law and taxation law, the court held that all provisions were related under the broad subject of "motor vehicles". Another act which was upheld by the court in *Orbison v. Welsh*, 242 Ind. 385, 179 N.E.2d 727 (1962), over a challenge of combining subject matters is the Indiana Port Commission Act, Acts of 1961, Chapter 11. That act combines elements of taxation law, property law and powers of eminent domain, administrative law and criminal law. Yet, the court found it constitutional because it all related to the broad subject of the Indiana Port Commission.

Taking into account the broad constructions afforded Article IV, Section 19, the presumption of constitutionality and the grouping of diverse matters under broad subject headings allowed by the Indiana courts, it is evident that there is a reasonable basis for the grouping together of the matters in Public Law 141. The broad subject in that law is the constructions, operation and jurisdiction of the courts in Indiana. As in the case of *Bright, supra*, almost any desired provision relating to that broad subject might be enacted under that heading. The Indiana Product Liability Act clearly falls under that broad heading and Public Law 141 should thus be sustained.

The upholding of Public Law 141 is further supported by the fact that the purpose of Article IV, Section 19 has not been violated by Public Law 141. The Legislature was aware of what that bill contained. The title proclaims it. The Legislature thus had the opportunity to pass and did pass on the merits of Public Law 141.

Finally, plaintiff would want the Court to believe that if it somehow should find two subjects in Public Law 141, that the Court is faced with the unacceptable decision to void all of Public Law 141. This argument is based upon the court's rulings in *State ex rel. Pearcy v. Criminal Court*, 262 Ind. 9, 274 N.E.2d 519 (1971), and *Jackson v. State*, 194 Ind. 248, 143 N.E. 423 (1924). The court in *Pearcy, supra*, voided an entire law citing *Jackson, supra*, for the proposition that when an act contains two subjects, the court must declare the entire statute void because the court cannot choose between the two subjects.

If the Court should somehow find two subjects in Public Law 141, however, it can uphold the Indiana Product Liability Act because of the severability provision in that Act. Section 7 of the Indiana Product Liability Act contains a severability provisions which provides as follows:

"If a provision of this or its application to a person or circumstance is held invalid, the invalidity does not affect other provisions or applications, to this end the provisions of this act are severable."

For the above reasons, the plaintiff has failed in meeting her heavy burden of showing that Public Law 141 violates Article IV, Section 19 of the Indiana Constitution.

### III.

In *Hines v. Elkhart General Hospital*, 465 F.Supp. 421, 434 (N.D.Ind.1979), aff'd 603 F.2d 646 (7th Cir. 1979), this Court concluded:

"This Judge commenced this journey with an instinctive sympathy for the plaintiffs' challenge to the Indiana Medical Malpractice Act. A careful analysis must reveal that such initial reaction was not in accord with sound legal teaching. Judges must beware lest they permit their own social and political views to interfere with the proper functioning of

the judicial process. Such counseling for judicial restraint is both old and honorable. As only one example see the great dissent written by the first Harlan in *Pollock v. Farmers Loan & Trust Co.,* 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1895). It has a special application to a review of a state legislative decision in an area of social, economic and political policy that is peculiarly within its discretion. It applies even more pointed where a United States District Judge is reviewing such state legislative action. The question is not whether the United States District Judge thinks the state legislature acted wisely. It is a question of whether it acted within the Constitution. Here it did." (footnote omitted)

Very recently the Supreme Court of Indiana is in accord with this result. See *Johnson v. St. Vincent Hospital, Inc.*, Ind., 404 N.E.2d 585 (1980).

It is not here necessary to deal with other issues raised by the plaintiff. This is especially true of the punitive damage issue which could only come up in a trial on the merits.

The Indiana General Assembly has acted clearly within the bounds of the Indiana Constitution. Its intent is clear. Its intent compels the dismissal of this case. SO ORDERED.

## APPENDIX A

## CHAPTER 20A
### PRODUCT LIABILITY

SECTION.

34–4–20A–1. Application of chapter—Actions based upon breach of warranty accepted.
34–4–20A–2. Definitions.
34–4–20A–3. Codification and restatement of strict liability in tort.
34–4–20A–4. Defenses to strict liability in tort.

SECTION.

34–4–20A–5. Statute of limitations.
34–4–20A–6. Indemnity.
34–4–20A–7. Severability.
34–4–20A–8. Declaration of emergency and effective dates.

**\* 34–4–20A–1.\* Application of chapter — Actions based upon breach of warranty accepted.** — This chapter shall govern all products liability actions, including those in which the theory of liability is negligence or strict liability in tort; Provided however, That this chapter does not apply to actions arising from or based upon any alleged breach of warranty. [IC 33–1–1.5–1, as added by Acts 1978, P.L. 141, § 28, p. 1298.]

**\* Compiler's Notes.** The sections in this chapter are not those enacted in the Indiana Code. As enacted by Acts 1978, P.L. 141, § 28 they were assigned the numbers 33–1–1.5–1 — 33–1–1.5–8 but were transferred to this location by the compiler as a more appropriate location.

This chapter does not apply to a cause of action accruing before June 1, 1978. See 34–4–20A–8(b).

**Cross References.** Breach of warranty, remedies, 26–1–2–313 — 26–1–2–315, 26–1–2–607.

Tort claims against governmental entities, 34–4–16.5–1 — 34–4–16.5–18.

**Indiana Law Review.** Note, When the Product Ticks: Products Liability and Statutes of Limitations, 11 Ind.L.Rev. 693.

Survey of Recent Developments in Indiana Law, XII. Products Liability (John F. Vargo and Jordan H. Leibman), 12 Ind.L.Rev. 227.

**\* 34–4–20A–2.\* Definitions.** — As used in this chapter:

"User or consumer" shall include: a purchaser; any individual who uses or consumes the product; or any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question.

"Product liability action" shall include all actions brought for or on account of personal injury, disability, disease, death or property damage caused by, or resulting from, the manufacture, construction or design of any product.

"Physical harm" includes bodily injury, death, loss of services, and rights arising therefrom, as well as damage to property.

"Seller" includes a manufacturer, a wholesaler, a retail dealer or a distributor. [IC 33–1–1.5–2, as added by Acts 1978, P.L. 141, § 28, p. 1298.]

* **Compiler's Notes.** This section number is not the official Indiana Code section number. See compiler's note to 34–4–20A–1.

**Indiana Law Review.** Survey of Recent Developments in Indiana Law, XII. Products Liability (John F. Vargo and Jordan H. Leibman), 12 Ind.L. Rev. 227.

**\* 34–4–20A–3.\* Codification and restatement of strict liability in tort.** — The common law of this state with respect to strict liability in tort is codified and restated as follows:

(a) One who sells any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm thereby caused to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and, if:

(1) The seller is engaged in the business of selling such a product, and

(2) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(b) The rule stated in subsection (a) applies although:

(1) the seller has exercised all possible care in the preparation and sale of his product, and

(2) the user or consumer has not bought the product from or entered into any contractual relation with the seller. [IC 33–1–1.5–3, as added by Acts 1978, P.L. 141, § 28, p. 1298.]

* **Compiler's Notes.** This section number is not the official Indiana Code section number. See compiler's note to 34–4–20A–1.

**Indiana Law Review.** Survey of Recent Developments in Indiana Law, XII. Products Liability (John F. Vargo and Jordan H. Leibman), 12 Ind.L. Rev. 227.

**\* 34–4–20A–4.\* Defenses to strict liability in tort.** — (a) The defenses in this chapter are defenses to actions in strict liability in tort. The burden of proof of any defense raised in a product liability action is on the party raising the defense.

(b) With respect to any product liability action based on strict liability in tort:

(1) It is a defense that the user or consumer discovered the defect and was aware of the danger and nevertheless proceeded unreasonably to make use of the product and was injured by it.

(2) It is a defense that a cause of the physical harm is a nonforeseeable misuse of the product by the claimant or any other person. Where the physical harm to the claimant is caused jointly by a defect in the product which made it unreasonably dangerous when it left the seller's hands and the misuse of the product by one other than the claimant, then the concurrent acts of the third party do not bar recovery by the claimant for the physical harm, but shall bar any rights of the third party, either as a claimant or as a subrogee.

(3) It is a defense that a cause of the physical harm is a nonforeseeable modification or alteration of the product made by any person after its delivery to the initial user or consumer if such modification or alteration is the proximate cause of physical harm.

(4) Whenever the physical harm is caused by the plan or design of the product, it is a defense that the methods, standards, or techniques of designing and manufacturing the product were prepared and applied in conformity with the generally recognized state of the art at the time the product was designed or manufactured. [IC 33–1–1.5–4, as added by Acts of 1978, P.L. 141, § 28, p. 1298.]

**\* Compiler's Notes.** This section number is not the official Indiana Code section number. See compiler's note to 34–4–20A–1.

**Indiana Law Review.** Survey of Recent Developments in Indiana Law, XII. Products Liability

(John F. Vargo and Jordan H. Leibman), 12 Ind.L. Rev. 227.

**\* 34–4–20A–5.\* Statute of limitations.** — This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5, any product liability action must be commenced within two [2] years after the cause of action accrues or within ten [10] years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight [8] years but not more than ten [10] years after that initial delivery, the action may be commenced at any time within two [2] years after the cause of action accrues. [IC 33–1–1.5–5, as added by Acts 1978, P.L. 141, § 28, p. 1298.]

**\* Compiler's Notes.** This section number is not the official Indiana Code section number. See compiler's note to 34–4–20A–1.

**Indiana Law Review.** Note, When the Product Ticks: Products Liability and Statutes of Limita-

tions, 11 Ind.L.Rev. 693.

Survey of Recent Developments in Indiana Law, XII. Products Liability (John F. Vargo and Jordan H. Leibman), 12 Ind.L.Rev. 227.

**\* 34–4–20A–6.\* Indemnity.** — Nothing contained herein shall affect the right of any person found liable to seek and obtain indemnity from any other person whose actual fault caused a product to be defective. [IC 33–1–1.5–6, as added by Acts 1978, P.L. 141, § 28, p. 1298.]

**\* Compiler's Notes.** This section number is not the official Indiana Code section number. See compiler's note to 34–4–20A–1.

**Indiana Law Review.** Survey of Recent Developments in Indiana Law, XII. Products Liability

(John F. Vargo and Jordan H. Leibman), 12 Ind.L. Rev. 227.

**\* 34–4–20A–7.\* Severability.** — If a provision of this act or its application to a person or circumstance is held invalid, the invalidity does not affect other provisions or applications, and to this end the provisions of this act are severable. [IC 33–1–1.5–7, as added by Acts 1978, P.L. 141, § 28, p. 1298.]

**\* Compiler's Notes.** This section number is not the official Indiana Code section number. See compiler's note to 34–4–20A–1.

**Indiana Law Review.** Survey of Recent Developments in Indiana Law, XII. Products Liability

(John F. Vargo and Jordan H. Leibman), 12 Ind.L. Rev. 227.

**\* 34–4–20A–8.\* Declaration of emergency and effective dates.** — (a) Because an emergency exists, IC 33–1–1.5 [34–4–20A–1 — 34–4–20A–8] takes effect June 1, 1978.

(b) IC 33–1–1.5 [34–4–20A–1 — 34–4–20A–8] does not apply to a cause of action that accrues before June 1, 1978. [IC 33–1–1.5–8, as added by Acts 1978, P.L. 141, § 28, p. 1298.]

*Compiler's Notes.* This section number is not the official Indiana Code section number. See compiler's note to 34–4–20A–1.

**Indiana Law Review.** Survey of Recent Developments in Indiana Law, XII. Products Liability (John F. Vargo and Jordan H. Leibman), 12 Ind.L. Rev. 227.