654 N.E.2d 1137 (1995)
In re TRAIN COLLISION AT GARY, INDIANA ON JANUARY 18, 1993.
Terry DILLON, et al., Individually and on Behalf of All Other Passengers, Spouses of Passengers, Dependent Next of Kin and Personal Representatives of Deceased Passengers Who Are Members of a Certified Class, Appellants-Plaintiffs,
v.
FCHICAGO SOUTH SHORE & NORTH BEND RAILWAY COMPANY and Northern Indiana Commuter Transportation District, Appellees-Defendants.
No. 45A03-9402-CV-69.
Court of Appeals of Indiana.
August 15, 1995.
Rehearing Denied January 5, 1996.
*1139 Kenneth J. Allen, Kenneth J. Allen & Associates, Valparaiso, George T. Patton, Jr., Bose McKinney & Evans, Indianapolis, for appellants.
Michael C. Harris, Harris, Welsh & Lukmann, Chesterton, Robert M. Burke, Brian Fetzer, Johnson & Bell, Ltd., Chicago, IL, for appellees.

OPINION
STATON, Judge.
Terry Dillon, individually, and on behalf of all other passengers, spouses of passengers, dependent next of kin, and personal representatives of deceased passengers who are members of a certified class (hereinafter "the Class") appeal from the trial court's grant of partial summary judgment in favor of Chicago South Shore & South Bend Railway Company and the Northern Indiana Commuter Transportation District. The Class presents five issues for appellate review which we separate into seven and restate as follows:
I. Whether the Commuter Transportation Districts Act violates Art. IV, § 23 of the Indiana Constitution.
II. Whether the Commuter Transportation Districts Act violates Art. IV, § 22 of the Indiana Constitution.

*1140 III. Whether the Commuter Transportation Districts Act, as amended, violates Art. 11, § 13 of the Indiana Constitution.
IV. Whether the liability limitations of the Indiana Tort Claims Act violate Art. 1, § 23 of the Indiana Constitution.
V. Whether the liability limitations of the Indiana Tort Claims Act violate Art. 1, § 12 of the Indiana Constitution.
VI. Whether the procurement of liability insurance waives the availability of the liability limitations of the Indiana Tort Claims Act.
VII. Whether NICTD, as a governmental entity, is subject to punitive damages.
We affirm.[1]
The facts pertinent to this appeal arise from a head-on collision between two Chicago South Shore & South Bend Railway passenger trains on January 18, 1993 in Gary, Indiana. The Chicago South Shore and South Bend Railway (hereinafter "the Railway") provides rail service from South Bend, Indiana to Chicago, Illinois.
The Northern Indiana Commuter Transportation District (hereinafter "NICTD") was established in 1977 pursuant to the Commuter Transportation Districts Act[2] which allowed counties directly served by a commuter transportation system providing daily interstate commuter service, to join a commuter transportation district. The district was supervised and managed by a board of trustees which received federal, state, municipal, or county funds for the purpose of aiding commuter transportation systems serving the district.[3] Pursuant to the Act, NICTD provided funding to the Railway until the Railway filed for bankruptcy in 1989. In 1990, NICTD acquired a portion of the Railway's assets and operated the commuter transportation service between South Bend and Chicago.[4] NICTD has continued this operation and was operating the passenger service of the Railway at the time of the January 1993 accident.
As a result of the accident, seven passengers died and approximately 137 passengers were injured. Several parties filed civil actions against NICTD and the Railway, and the trial court certified this cause as a class action on April 29, 1993. Thereafter, the Class filed a fourth amended complaint alleging in excess of five million dollars in compensatory and punitive damages.
NICTD then filed a motion to strike count I of the Class' complaint on the ground that the Class' request for damages in an amount in excess of five million dollars exceeded the statutory limit of recovery against a governmental entity as provided by the Indiana Tort Claims Act[5]. NICTD also moved to dismiss Count II of the Class' complaint on the ground that as a governmental entity under the Indiana Tort Claims Act, NICTD was not subject to punitive damages.
The trial court treated NICTD's motion as a motion for summary judgment pursuant to Ind. Trial Rule 12(B). The trial court found *1141 that no genuine issue of material fact existed and granted NICTD's motion to dismiss Count II. The trial court also struck Paragraph 8 of Count I of the Class' complaint but found that the Class could proceed to trial on Count I of its complaint with recovery limited to the amounts provided by the Indiana Tort Claims Act. The Class now appeals.
I.

Commuter Transportation Districts Act and Article TV, Section 23
The Class contends the Commuter Transportation Districts Act ("the Transportation Act") is unconstitutional under Art. IV, § 23 of the Indiana Constitution.
The Indiana Supreme Court has set forth the following standard of review for assessing constitutional challenges:
Legislation under constitutional attack . . . is clothed in a presumption of constitutionality. The burden to rebut this presumption is upon any challenger, and all reasonable doubts must be resolved in favor of an act's constitutionality. When a statute can be construed to support its constitutionality, such construction must be adopted. . . . Further, it is the challenger's burden to show that the alleged constitutional defects are clearly apparent.
Matter of Tina T. (1991), Ind., 579 N.E.2d 48, 56-57 (citation omitted).
The Class challenges the establishment of NICTD pursuant to the Transportation Act. First, the Class contends that the Transportation Act violates Art. IV, § 23 because it is a special law. Art. IV, § 23 provides that "[i]n all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state."
A determination that a legislative act does not operate uniformly throughout the state renders it a special law and thus, violative of our Constitution. State Election Bd. v. Behnke (1974), 261 Ind. 540, 307 N.E.2d 56, 58. A law which appears to be general in form, but upon investigation of the subject matter is found to be local or special in substance, will be declared a special law by the court. Id.
A statute authorizing the creation of an authority, district or commission is not characterized as a local or special law simply because at the time of its enactment it applies to but one city. Graves v. City of Muncie (1970), 255 Ind. 360, 264 N.E.2d 607, 610. The fact that one governmental unit presently qualifies under a particular statute and the statute was apparently drafted with that one unit in mind does not render the statute unconstitutional if the terms of the statute permit other units to eventually qualify. North Twp. Advisory Board v. Mamala (1986), Ind., 490 N.E.2d 725, 726, reh. denied.
The Transportation Act provides in pertinent part:
(a) A county served by a system of commuter transportation and through which the line, road, route, or right-of-way of the system passes, is a member, subject to subsection (b), of a commuter transportation district. The district is created and shall be composed solely of counties which are served by the system and through which the system passes.
(b) A county is a member of a district if that county's board of county commissioners adopted an ordinance authorizing the county's membership in the district under this chapter before January 1, 1987.
(c) A district shall be a distinct municipal corporation and shall bear a name including the words `commuter transportation district'. Such municipal corporation shall include all the territory of the counties that are members of the district and shall be coterminous with such counties.
(d) Membership of the district is limited to counties which are directly served by a commuter transportation system which provides daily interstate commuter service and which owns and operates over trackage within the boundaries of the county.
*1142 I.C. 8-5-15-2 (as amended by 1987 Ind. Acts, P.L. 385-1987(ss), Sec. 2).[6]
The Act was specifically enacted to maintain the operation of interstate commuter transportation systems.[7] At the time of its enactment, two such systems qualified: the Railway at issue here, and a railway system which operated between Valparaiso, Indiana and Chicago, Illinois.[8] Only the counties operating the Railway chose to establish a commuter transportation district under the Act.
This case presents issues of first impression in Indiana regarding the constitutionality of the Transportation Act. In assessing the constitutionality of the Transportation Act, we rely upon the Indiana Supreme Court's recent decision of Indiana Gaming Comm'n v. Moseley (1994), Ind., 643 N.E.2d 296 which rejected a constitutional challenge to the Indiana Riverboat Gambling Statute[9].
In Indiana Gaming, the Indiana Supreme Court addressed whether the Riverboat Gambling Statute was unconstitutional under Art. IV, § 23. The court instructed that the first inquiry in determining whether a statute is special legislation is whether the subject of the statute is amenable to a general law of uniform operation throughout the state. Id. at 301. If the answer is no, the inquiry of the court ends and the act is constitutional under Section 23. Id. (quoting Cash v. Auditor of Clark County (1855), 7 Ind. 227, 229 ("the subject matter of the law being entirely local, we do not see how a local law applicable to it can infringe any constitutional provision")). The court explained that the drafters of our constitution expressed a preference for general laws but also recognized that special laws were sometimes necessary. Id at 300. The court noted that the constitution provided no clear guidance to aid in identifying those cases in which a local law should be allowed. Id at 301.
Applying this to the Riverboat Gambling Statute, the Indiana Supreme Court found that the legislature's decision to permit casino gambling only on riverboats had the effect of rendering most Indiana counties unable to participate as only certain counties would have sufficiently sized bodies of water to accommodate the size of these riverboats. Id. The court concluded that in enacting the Riverboat Gambling Statute, the legislature specified those counties which operated a riverboat and determined that riverboat gambling was not subject to a uniform law of general applicability, and thus, was constitutional under Art. IV, § 23.[10]Id.
The enactment of the Transportation Act was specifically designed to preserve and encourage increased use of commuter transportation for daily interstate travellers. Analogous to riverboat gambling, interstate commuter transportation is limited only to those geographical areas where residents travel on a daily basis from one state to another for employment, and where such transportation systems were readily available. *1143 The Transportation Act provided that membership of a commuter transportation district was limited to counties which were directly served by a commuter transportation system which provides daily interstate commuter service and which owned and operated over trackage within boundaries of the county. See I.C. 8-5-15-2(d). By its own language, the Transportation Act was limited in scope.
Comparable to riverboat gambling, interstate railway commuter transportation is not subject to a uniform law of general applicability. Accordingly, based upon Indiana Gaming, we determine that the Transportation Act was enacted as a local law and therefore, is constitutional under Art. IV, § 23. Id. at 301.
The Class also contends that the Transportation Act, as amended, is unconstitutional under Art. IV, § 23. As indicated supra, Art. IV, § 23 provides that "[i]n all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state."
The amendment to the Transportation Act at issue states that a county will be a member of a district if that county's board of county commissioners adopted an ordinance authorizing the county's membership in the district before January 1, 1987. I.C. 8-5-15-2(b).
The Class contends that: (1) this mandatory time deadline for counties to become members of a commuter transportation district is unconstitutional because it operated to exclude other counties from eligibility; and (2) this amendment renders the entire Act unconstitutional.[11] We disagree.
We note initially that if an act of the legislature is constitutional when enacted, it will not be rendered unconstitutional by any subsequent legislative act. Board of Comm'rs of St. Joseph County v. Crowe (1938), 214 Ind. 446, 14 N.E.2d 903, 904. As indicated supra, the Transportation Act, as enacted, is constitutional. Thus, we reject the Class' claim that this amendment renders the entire Act unconstitutional.
It is fundamental law that the power to enact statutes necessarily entails the power to repeal or modify them. Haverstock v. Public Employees Retirement Fund (1986), Ind.App., 490 N.E.2d 357, 360, trans, denied. In instances where the legislature creates certain entities by statute, the legislature also has the power to alter that statute's enabling provisions or alter it altogether. See Holland v. Ballard (1978), 270 Ind. 173, 383 N.E.2d 1032, 1034. The legislature has the power to create filing deadlines within statutes. The legislature also has the power to amend these deadlines in an effort to ensure that tasks are completed by a specific date. See United Rural Electric Membership Co. v. Ind. & Mich. Electric Co. (1990), Ind., 549 N.E.2d 1019, 1021-22, reh. denied (legislature amended original act requiring deadline for filing petitions and boundary maps with Indiana Utility Regulatory Commission to resolve boundary disputes).
Here, the legislature imposed a time deadline for counties to become members of a *1144 district.[12] It was well within the province of the legislature to amend its legislation and to impose a deadline. Holland, supra, 383 N.E.2d at 1034 and United Rural Electric, supra, at 1022. Accordingly, we reject the Class' contention that the 1987 amendment imposing the January 1, 1987 deadline for counties to become members of a commuter transportation district was unconstitutional under Art. IV, § 23.[13]
II.

Commuter Transportation Districts Act and Article TV, Section 22
The Class contends that the Transportation Act violates Art. IV, § 22(9). This section provides that "The General Assembly shall not pass local or special laws:. . . [r]egulating county and township business. . ." However, the Class fails to cite any authority beyond the constitutional language to support its contention that the act is unconstitutional on this ground. Generally, a party waives any allegation of error if the party fails to cite any citation to authority or statutes. Ind. Appellate Rule 8.3(A)(7); Captain & Co., Inc. v. Stenberg (1987), Ind. App., 505 N.E.2d 88, 95, trans, denied. Accordingly, the Class has waived any argument on this issue.
Notwithstanding waiver, the term "business", as contemplated by the constitution, refers to the conduct of the usual affairs of a public corporation and the conduct of such affairs which involves the attention of township and county officers. YeUon v. Plantz (1950), 228 Ind. 79, 89 N.E.2d 540, 544. The term does not apply to acts granting relief in particular and extraordinary cases. Id It does not mean the performance of an act which can be done in a particular case, and by authority of a specific law. Id. The Transportation Act is a constitutional local law and the counties' obligations under the Act are created by authority of a specific law applicable only in limited circumstances. The Act does not affect how counties comprising a commuter transportation district conduct their usual affairs. Accordingly, we determine that the Transportation Act is not a law that regulates "business" as contemplated by Art. IV, § 22(9). Yelton, supra, 89 N.E.2d at 544.
III.

Commuter Transportation District Act and Article 11, Section 13
The Class contends that the Transportation Act violates Art. 11, § 13 of the Ind. Constitution which states that "Corporations, other than banking, shall not be created by special act, but may be formed under general laws."
Here, NICTD was enacted pursuant to the original language of the Transportation Act. The 1987 amendment to the Transportation *1145 Act rendered any transportation district created under the Act to be a municipal corporation.[14] As stated supra, any subsequent legislative act cannot render a constitutional statute unconstitutional. Board of Comm'rs of St. Joseph County, supra, 14 N.E.2d at 904.
Nevertheless, we acknowledge that the Indiana Supreme Court has extended the prohibitions of Art. 11, § 13 to include municipal corporations. Ennis v. State Highway Comm'n (1952), 231 Ind. 311,108 N.E.2d 687, 694 (citing Town of Longview v. City of CrawfordsviUe (1905), 164 Ind. 117, 73 N.E. 78). However, the Indiana Supreme Court has declined to extend this section to include boards or commissions in light of our constitutional framers intent to limit the application of Art. 11, § 13 to private corporations. Id.
Special legislative acts which merely regulate the exercise of power already possessed by a corporate entity will not violate Art. 11, § 13. Town of Longview, supra, at 126, 73 N.E. 78; City of Indianapolis v. Navin (1897), 151 Ind. 139, 51 N.E. 80, reh. denied. In City of Indianapolis, the Indiana Supreme Court determined that a legislative act which regulated the maximum rate to be collected by street railway companies in cities with populations of 100,000 or more did not create any new corporate power or franchise, and therefore, was constitutional. Id. at 153, 51 N.E. 80.
This amendment, which named a commuter transportation district a municipal corporation, did not create or bring into being a corporation but instead merely renamed an existing entity. This does not render the amendment unconstitutional. Cf. City of Indianapolis, supra, at 150, 51 N.E. 80.
Moreover, the Indiana Supreme Court has upheld the constitutionality of certain agencies and commissions established pursuant to legislation designed to foster public goals. See Orbison v. Welsh (1962), 242 Ind. 385, 179 N.E.2d 727, 737 (Indiana Port Commission Act deemed agency or instrumentality of the state created for a public purpose and therefore, not a corporation within the meaning of Art. 11, § 13 of the Ind. Constitution); Book v. State Office Building Comm'n (1958), 238 Ind. 120, 149 N.E.2d 273, 282 (creation of commission for the public purpose of providing adequate office space for state departments and agencies not a corporation under Art. 11, § 13 of Ind. Constitution).
As indicated supra, the Transportation Act is a constitutional local law created as a means to promote development of the metropolitan regions of the state in order to facilitate economic, social, and educational opportunities, and to promote the general welfare of its residents. The purpose of Art. 11, § 13 was to prevent the legislature from creating private corporations. Ennis, supra, 108 N.E.2d at 694. NICTD is not a private corporation but instead is a district comprised of four counties bound together for a public purpose. Based upon this public purpose, we cannot conclude that NICTD is a corporation within the meaning of Art. 11, § 13 of the Ind. Constitution.

IV.

Indiana Tort Claims Act and Article 1, Section 23
The Class contends that the liability limitations of the Indiana Tort Claims Act ("Tort Claims Act") violate Art. I, § 23 of the Ind. Constitution.
As indicated supra, legislation under constitutional attack is clothed in a presumption of constitutionality. Matter of Tina T., supra, at 56. The burden to rebut this presumption is on the challenger, and all reasonable doubts must be resolved in favor of a statute's constitutionality. Id. When a statute can be construed to support its constitutionality, such construction must be adopted. Id
The Tort Claims Act provides in pertinent part:
The combined aggregate liability of all governmental entities and of all public employees, acting within the scope of their employment . . . does not exceed three *1146 hundred thousand dollars ($300,000) for injury to or death of one (1) person in any one (1) occurrence and does not exceed five million dollars ($5,000,000) for injury to or death of all persons in that occurrence.
I.C. 34-3-16.5-4. The Tort Claims Act further provides that a commuter transportation district created under the Transportation Act will be treated as a political subdivision which, under the Tort Claims Act, is a governmental entity. See I.C. 34-4-16.5-2(2) and I.C. 34-4-16.5-20(a)(2).
The Class contends that the above liability limitations, as applied to its claim, violate Art. 1, § 23 of the Ind. Constitution. Art. 1, § 23 provides, "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."
The Indiana Supreme Court has recently adopted a new test in assessing a constitutional claim under Art. 1, § 23. The court determined:
. . . Article 1, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.
Collins v. Day (1994), Ind., 644 N.E.2d 72, 80.
By adopting this test, the Indiana Supreme Court noted that resolution of Section 23 claims would no longer require an analytical framework applying varying degrees of scrutiny for different protected interests. Id. The court explained:
The protections assured by Section 23 apply fully, equally, and without diminution to prohibit any and all improper grants of unequal privileges or immunities, including not only those grants involving suspect classes or impinging upon fundamental rights but other such grants as well.
Id
The Class contends that application of the liability limitations of the Tort Claims Act violates Art. I, § 23 because it limits its recovery based upon the Class' status as interstate travellers on a commuter railway. The Class argues that interstate travellers on other railways in the state would not be subject to the liability limitations of the Tort Claims Act and thus, application of these limitations to its claim is unconstitutional.
Applying the test set forth in Collins, our first inquiry must be whether the distinction of interstate travellers on a commuter railway from other rail travellers in Indiana is reasonably related to inherent characteristics which distinguish the unequally treated classes.
The legislative purpose of the Tort Claims Act was to limit the financial responsibility of the state by restricting damages in tort in order to protect the fiscal integrity of governmental bodies. Board of Commr's of Hendricks County v. King (1985), Ind.App., 481 N.E.2d 1327, 1330. Liability limitations on a person's recovery against the state or a political subdivision are designed to preserve public treasuries, protect against the possibility of unusually large recoveries, and discourage excessive litigation.
The legislative intent of the Transportation Act was to maintain the availability and accessibility of interstate commuter transportation in Indiana for the purpose of promoting the growth and development of the metropolitan regions of the state. By availing the liability protections under the Tort Claims Act to commuter transportation districts created under the Transportation Act, the legislature furthered its overall purpose to preserve the operation of interstate commuter railways by protecting the financial integrity of counties served by a commuter railway. Application of the liability limitations of the Tort Claims Act to the Class' claim is rationally related to the protection of these state concerns. Therefore, we conclude that the liability limitations are constitutional under the first prong of the Collins test.
*1147 Next, we must determine whether the application of the liability limitations of the Tort Claims Act is uniformly applicable and equally available to all persons who are or may become interstate commuter travellers.
The liability limitations of the Tort Claims Act apply, if not excluded under I.C. 34-4-16.5-3, to all governmental entities and all public employees acting within the scope of their employment. I.C. 34-4-16.5-4. Thus, the liability limitations will apply uniformly and equally to all persons who obtain recovery against a governmental entity deemed liable. Moreover, any passenger, interstate or intrastate, bringing suit against a commuter transportation district would be subject to the liability limitations of the Tort Claims Act. This case does not create a classification affecting interstate travellers differently from intrastate travellers nor does it create a classification affecting different classes of persons who bring suit against a governmental entity. Instead, the liability limitations apply equally and uniformly to all persons injured while passengers on an interstate commuter railway operated by a commuter transportation district and thus, satisfies the second prong of the Collins test.
In light of the substantial deference we must afford to the discretion of the Legislature, we conclude that application of the liability limitations to the Class' claim is constitutional under Section 23.[15]
V.

Indiana Tort Claims Act and Article 1, Section 12
The Class also contends that the liability limitations, as applied to its claim, violate Art. 1, § 12 of the Ind. Constitution. Art. 1, § 12 provides:
All courts shall be open, and every person; for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.
Although Indiana courts have never addressed the issue of the constitutionality of the liability limitations of the Tort Claims Act under Art. 1, § 12, the Indiana Supreme Court has upheld statutes which have similarly limited a litigant's right of recovery.
In Johnson v. St. Vincent Hospital, Inc. (1980), 273 Ind. 374, 404 N.E.2d 585, 594, the Indiana Supreme Court upheld the constitutionality of the Ind. Medical Malpractice Act which limited a litigant's right to sue a physician. The court noted that the relationship between a health care provider and a patient exists from a common law legal duty and that *1148 the nature and extent of that duty could be modified by legislation. Id. Thus, the legislature could also validly act to restrict the remedy available for a breach of that duty. Id The court concluded that a statutory provision of the Medical Malpractice Act cannot be regarded as repugnant to Art. 1, § 12 simply because it alters the standing manner of achieving a remedy in court, or because it restricts a longstanding remedy. Id
In Sidle v. Majors (1976), 264 Ind. 206, 341 N.E.2d 763, reh. denied the court determined that the Indiana Guest Statute which precludes a guest passenger of a motor vehicle from recovering damages for personal injuries against the operator or owner, did not contravene Art. 1, § 12. The court noted that the rights of property which have been created by common law cannot be taken away without due process; but the law itself may be changed at the will of the legislature. Id 341 N.E.2d at 774 (citing Gallegher v. Davis (1936), Super., 37 Del. 380,183 A. 620).
The Class argues that our common law, prior to the enactment of the Tort Claims Act, provided the Class with a legal remedy against NICTD and that the Tort Claims Act's present limitation on that remedy is repugnant to Art. 1, § 12.
The Indiana Supreme Court has noted that sovereign immunity has been a fixture of Indiana common law despite the inclusion of Art 1, § 12 of the Ind. Constitution. State v. Rendleman (1992), Ind., 603 N.E.2d 1333, 1335.[16] The court pointed out that at the time of the enactment of the Tort Claims Act, the common law of Indiana was that governmental entities were not immune from tort claims resulting from a governmental entity employee's breach of a private duty owed to an individual, but governmental entities were immune from claims resulting from a breach of its public duties to all. Id. at 1336.
In Rendleman, the Indiana Supreme Court addressed a similar issue. There, the plaintiff argued that the Tort Claims Act violated Art. 1, § 12 because it precluded him from obtaining a remedy for his personal injury and property damage sustained as a result of a motor vehicle accident with an Indiana State Trooper. Id at 1333-1334. The plaintiff argued that his claim was based upon a breach of a private duty which was an action available to him at common law and thus, could not be taken away by the enactment of the Tort Claims Act.
In rejecting Rendleman's constitutional claim, the court explained that it was well settled that, although courts interpret the common law, legislatures have the authority to modify or abrogate common law rights so long as such change does not interfere with constitutional rights. Id. The court opined, "Indiana courts have uniformly held that, in cases involving injury to person or property, Article 1 § 12 does not prevent the legislature from modifying or restricting common law rights and remedies."[17]Id. The court concluded that in tort cases, the source of authority or lack thereof to sue the State originally arose from rights at common law, not rights contained in the constitution and thus, it was within the legislature's authority to expand or restrict the scope of sovereign immunity through the Tort Claims Act. Id. at 1337.
Applying the reasoning of the Indiana Supreme Court, we disagree with the Class' contention that the liability limitations of the Tort Claims Act violate Art 1, § 12. A citizen's right to sue a governmental entity derives not from constitutional rights but from rights at common law. Id. Thus, a citizen's right to sue a governmental entity for damages *1149 as provided in I.C. 34-4-16.5-3 of the Tort Claims Act is a right granted to that citizen at common law which in turn may be restricted by legislative act. The legislative purpose behind the liability limitations was to protect the financial integrity of a governmental entity, and this statutory provision cannot be deemed repugnant to the constitution merely because it restricts the amount of damages available to the Class. Johnson, supra, at 594. Accordingly, we conclude that the liability limitations of I.C. 34-4-16.5-4 reflect a proper exercise of the legislature's authority and do not violate Art. 1, § 12 of the Ind. Constitution.
VI.

Waiver
The Class contends that NICTD's procurement of liability insurance constitutes a waiver of the liability limitations of the Tort Claims Act to the extent of its insurance coverage.
The Class points out that the Transportation Act requires NICTD to annually certify that it has obtained financial responsibility against liability of the district under any agreement with a commuter transportation system. See I.C. X-X-XX-XX. Additionally, the Tort Claims Act provides that a political subdivision may purchase insurance to cover the liability of itself or its employees. See I.C. 34-4-16.5-18.
The Class relies upon Flowers v. Board of Comm'rs of County of Vanderburgh (1960), 240 Ind. 668, 168 N.E.2d 224 to support its contention that NICTD waived applicability of the liability limitations of the Tort Claims Act when it purchased liability insurance.[18]
In Flowers, the Indiana Supreme Court determined that the county waived a defense of sovereign immunity based upon its purchase of certain liability insurance policies. Id, 168 N.E.2d at 227. However, in Flowers, the statute at issue expressly provided that if a county purchased a liability insurance policy and a cause of action arose, the insurance carrier could not rely upon sovereign immunity as a defense. Id. 168 N.E.2d at 226-227. Here, neither the Transportation Act nor the Tort Claims Act contain such language. Thus, the Class' reliance upon Flowers is not persuasive.[19]
Moreover, neither the fact that the Legislature required NICTD to purchase liability insurance under the Transportation Act nor the fact that governmental entities have the power to purchase insurance under the Tort Claims Act lead us to conclude that the Legislature intended for such purchases to provide a waiver of the liability limitations.
A waiver is an intentional relinquishment of a known right and is a voluntary act. Henry B. Gilpin Co. v. Moxley (1982), Ind. App., 434 N.E.2d 914, 919, n. 3. Absent any express statutory or constitutional provision, we cannot determine NICTD waived the damages limitations of the Tort Claims Act by virtue of its purchase of liability insurance as required by the Transportation Act. Accordingly, we reject the contention that NICTD's purchase of liability insurance constituted waiver.

*1150 VII.

Punitive Damages
Finally, the Class contends that NICTD should not be immune from punitive damages. The Tort Claims Act indicates that a governmental entity is not liable for punitive damages. I.C. 34-4-16.5-4. The Indiana Supreme Court has noted that this provision is part of the Tort Claims Act but:
. . . [T]he concept of the state not having a state of mind or not being deterred by punitive damages is the basis for the prohibition of such punitive damages in all cases applicable to the state. [The Tort Claims] Act should be considered as a statement of public policy by the legislature that the state is not to be considered as being liable for punitive damages. . . .
State v. Denny (1980), 273 Ind. 556, 406 N.E.2d 240, 241.
In support of its contention, the Class relies upon Buckley v. Standard Investment Co. (1992), Ind., 586 N.E.2d 843 in which the Indiana Supreme Court determined that a utility gas company, operated by an independent, self-perpetuating Board of Trustees, was not a governmental entity under the Tort Claims Act because of the company's tenuous relationship with the city government. The Class similarly contends that NICTD is not a governmental entity under the Tort Claims Act.
As indicated supra in Part TV, the Tort Claims Act specifically provides that any commuter transportation district created under the Transportation Act will be treated as a political subdivision, which, under the Tort Claims Act, is a governmental entity. See I.C. 34-4-16.5-2(2) and I.C. 34-4-16.5-20(a)(2). Thus, unlike the utility company in Buckley, the Tort Claims Act specifically includes a commuter transportation district, and we will not question this designation by the Legislature.
Because NICTD is a governmental entity under the Tort Claims Act, it is not subject to punitive damages. We therefore reject the Class' contention that NICTD should not be immune from punitive damages.

Affirmed.
HOFFMAN and GARRARD, JJ., concur.
NOTES
[1] Initially, we note that NICTD and the Railway contend that this court does not have jurisdiction to entertain this appeal. The record indicates that this court originally dismissed this appeal for lack of jurisdiction based upon appellants' failure to timely file the record of proceedings. However, this court granted appellants' petition for rehearing and reinstated this appeal by order which directed the Clerk to file the previously tendered record of proceedings on November 3, 1994.

NICTD and the Railway now contend that we should reinstate our previous order to dismiss. We decline to do so. While this court has the power to revisit prior decisions of its own, it should only do so in the case of extraordinary circumstances. See Landowners v. City of Fort Wayne (1993), Ind.App., 622 N.E.2d 548, 549, reh. denied. NICTD and the Railway fail to set forth any reasons why we should set aside our order to reinstate this appeal. Accordingly, we decline their invitation to revisit our decision to grant appellant's petition for rehearing and reinstate this appeal, and we will address this appeal on its merits.
[2] Originally codified as Ind.Code 19-5-2.6-1 et seq.; now found at I.C. 8-5-15 et seq.
[3] I.C. 8-5-15-5.
[4] I.C. 8-5-15-5(a)(12) (as amended by 1984 Ind. Acts, P.L. 64-1984, § 3) empowered the board of trustees of a commuter transportation district to purchase, acquire, lease or lease with option to purchase, all or any part of the assets of a railroad that is providing commuter transportation services within the district.
[5] I.C. 34-4-16.5 et seq.
[6] The 1987 amendment to the Act changed § 2(b) which originally stated "a county may become a member of a district upon the adoption by the board of county commissioners of an ordinance authorizing the county's membership in the district and establishing an effective date for membership (if the date occurs not more than thirty (30) days after the date of adoption of the ordinance)."
[7] The Transportation Act, as originally enacted, was established for the following reasons:

Sec. 1. Because means of public commuter transportation involve problems that are not confined to one (1) county in scope, the problems cannot be satisfactorily solved by existing county or municipal units of government.
It is the purpose of this chapter to enable counties affected by the operation of a commuter transportation system to join together to form a special purpose district to meet and solve the problems of providing public commuter transportation across county lines. By assuringthe availability and accessibility of commuter transportation, it is also the purpose of this chapter to promote the growth and development of the metropolitan regions of this state and render, thereby, increased economic, social, and educational opportunities and a higher regard for the welfare of its residents.
See 1977 Ind. Acts, P.L. 229 § 1, chap. 2.6.
[8] The commuter railway between Valparaiso, Indiana and Chicago, Illinois, which was operated by Amtrak from approximately 1979 through 1990, no longer provides commuter service.
[9] I.C. 4-33-1 et seq.
[10] The first chapter of the Riverboat Gambling Statute provides that the statute was only applicable to those counties contiguous to Lake Michigan, the Ohio River, and Patoka Lake. See I.C. 4-33-1-1.
[11] The Class argues that the imposition of the January 1, 1987 deadline is unconstitutional based upon the Indiana Supreme Court's decision that a statute may not contain a time expiration provision which would effectively operate to preclude other governmental units from qualifying under a statute. North Twp. Advisory Board, supra, at 726. See also State Election Bd., supra, (statute which classifies based upon population in which only one county could ever qualify deemed special law and unconstitutional); Rosencrani v. City of Evansville (1924), 194 Ind. 499, 143 N.E. 593 (statute general in form but which designates city by narrow population limit of more than 85,000 and less than 86,000 making certain that only one city will be subject to law by mandatory cut off dates is an arbitrary method to classify and merely an attempt to avoid the constitutional prohibition against special legislation).

However, in each of these cases, the court questioned the constitutionality of statutes which, as enacted, contained mandatory deadlines whereas the focal point here is whether this amendment to the Transportation Act containing the January 1, 1987 deadline is constitutional. Thus, we find the Class' reliance upon Mamala, supra, State Election Board, supra, and Rosencranz, supra, unpersuasive.
[12] We acknowledge the Class' contention that the deadline limits other counties from joining a commuter transportation district. However, as indicated supra, the Transportation Act is a local law affecting only those counties which qualified under the Act and at the time of this amendment, the only counties subject to the Act were the counties which comprised NICTD. Thus, because of the limited applicability of this amendment, we reject the Class' contention that this mandatory time deadline is unconstitutional on the ground that it is a special law which does not operate uniformly throughout the state.
[13] In addition to the imposition of the January 1, 1987 deadline, the Class points our attention to I.C. 8-5-15-3 (as amended by 1987 Ind. Acts, P.L. 385-1987(ss)) which provides that each district would be supervised and managed by a board of trustees consisting of four members, one from each county that is a member of the district, appointed by that county's board of directors, and four members, one from each county that is a member of the district, each of whom is the president of that county's county council or another council member designated by the president as a board member.

The Class argues that this amendment requiring four members, one from each county, to comprise the board of trustees specifically catered to NICTD, the only district under the statute which had four county members (Lake, Porter, LaPorte, and St. Joseph). The Class contends that this was unconstitutional because it prevented the formation of other districts. We reject this contention. At the time this amendment was enacted, only NICTD, with its four county members, had been established since the promulgation of the Transportation Act in 1977. As indicated supra, the Transportation Act was enacted as a local law applicable to only certain counties. Because NICTD was the only district established under the Act, this amendment merely reflected that circumstance.
[14] See I.C. 8-5-15-2(c).
[15] The Class also contends that the liability limitations of the Tort Claims Act violate the Fourteenth Amendment of the United States Constitution which provides that ". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Class contends that the liability limitations of the Tort Claims Act implicates its fundamental right to travel and thus, our standard of review should be strict scrutiny. However, the United States Supreme Court has stated that a state law implicates the fundamental right to travel when it actually deters such travel, when its primary objective is to impede travel, or when it uses any classification which serves to penalize the exercise of that right. Att'y Gen. of N.Y. v. Soto-Lopez (1986), 476 U.S. 898, 903, 106 S.Ct. 2317, 2321, 90 L.Ed.2d 899. The Class has not shown how the imposition of the liability limitations deters passengers from using the Railway. The legislative purpose of the Transportation Act was to preserve and encourage continued use of railways by interstate commuters. Furthermore, as indicated supra, neither the Transportation Act nor the Tort Claims Act treat interstate travellers on the Railway differently from intrastate travellers on the Railway. Thus, we reject the Class' contention that this case implicates a person's fundamental right to interstate travel as contemplated by the United States Supreme Court.
Instead, we must address whether the liability limitations of the Tort Claims Act bear a rational relationship to a legitimate state interest. Indiana Gaming, supra, at 304. As indicated supra, the Tort Claims Act was designed to protect the fiscal integrity of governmental bodies by preserving public treasuries, protecting against the possibility of unusually large recoveries, and discouraging excessive litigation. The liability limitations of the Tort Claims Act are rationally related to these legitimate state interests. Accordingly, we conclude that the liability limitations are constitutional under the Fourteenth Amendment of the United States Constitution.
[16] The court explained that the doctrine of sovereign immunity developed in England as a common law doctrine found on the substantive principle that "the king could do no wrong" and encompassing the procedural notion that the king, as a sovereign, was not subject to being sued in his own court. Rendleman, supra.
[17] The court noted prior rejections to Art. 1, § 12 challenges in Sidle, supra (Guest Statute); Dague v. Piper Aircraft (1981) 275 Ind. 520, 418 N.E.2d 207, reh. denied (shortening of the statute of limitations in product liability actions); Pennington v. Stewart (1937) 212 Ind. 553, 10 N.E.2d 619 (legislature's abolishment of a cause of action for alienation of affections); and Beecher v. White (1983), Ind.App., 447 N.E.2d 622, trans, denied (change in the statute of limitations for deficiencies in improvements to real property). Rendleman, supra, at 1336-1337.
[18] The Class also relies upon cases outside this jurisdiction to support this claim which we decline to adopt. See e.g., Smith Plumbing Co. v. Aetna Casualty and Surety Co. (1986), 149 Ariz. 524, 720 P.2d 499, cert, denied, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581; Herweg v. Bd. of Educ. (1983), Okla., 673 P.2d 154; Crowell v. School Dist. No. 7 of Gallatin County (1991), 247 Mont. 38, 805 P.2d 522. However, we question the Class' reliance upon Espinosa v. Southern Pacific Transp. Co. (1981), 291 Or. 853, 635 P.2d 638, 644 in which the Oregon Supreme Court determined that the liability limits of the Oregon Tort Claims Act were applicable regardless of the purchase of insurance in excess of those limits.
[19] The Class also cites other jurisdictions which have determined that purchase of liability insurance constitutes waiver based upon express statutory or constitutional provisions. See e.g., Avallone v. Bd. of County Comm'rs of Citrus County (1986), Fla., 493 So.2d 1002 (statute); Litterilla v. Hospital Auth. of Fulton County (1992), 262 Ga. 34, 413 S.E.2d 718 (constitution); Antiporek v. Village of Hillside (1986), 114 IU.2d 246, 102 Ill.Dec. 294, 499 N.E.2d 1307 (statute); Kee v. State Highway Admin. (1986), 68 Md.App. 473, 513 A.2d 930, vacated on other grounds, 309 Md. 523, 525 A.2d 637 (statute); and Pirkov-Middaugh v. Gillette Children's Hosp. (1993), Minn., 495 N.W.2d 608 (statute). However, because no similar statutory or constitutional provision exists in Indiana, we find the Class' reliance upon these cases unpersuasive.