Charles A. HOOVLER, Linda L. Okos, Martin Okos, Patricia Ann Palmer, Robert M. Stwalley, III, and Jeff Symmes, Individually and as Representatives for and on behalf of all other taxpayers similarly situated, Appellants–Plaintiffs,

v.

STATE of Indiana, Indiana Department of Revenue, Appellees–Defendants.

No. 79A02–9705–CV–312.

Court of Appeals of Indiana.

Dec. 17, 1997.

Transfer Denied March 3, 1998.

---

Thomas J. Herr, Truitt & Herr, Lafayette, for Appellants–Plaintiffs.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Beth H. Henkel, Deputy Attorneys General, Indianapolis, for Appellees–Defendants.

## OPINION

KIRSCH, Judge.

Appellants-plaintiffs, Charles A. Hoovler, Linda L. Okos, Martin Okos, Patricia Ann Palmer, Robert M. Stwalley, III, and Jeff Symmes, individually and as representatives for and on behalf of all other taxpayers similarly situated (collectively, "the taxpayers"), challenge the constitutionality of P.L. 44–1994, legislation that authorizes an increase in the economic development income tax in Indiana counties and cities falling within certain narrowly-defined population ranges.

We affirm.

## FACTS AND PROCEDURAL HISTORY

P.L. 44–1994 allows Indiana counties with a population between 129,000 and 130,600 to increase their economic development income tax rate. Tippecanoe County is currently the only county in Indiana to fall within the stated population range.[1] The taxpayers are Tippecanoe County residents, certified as a class for purposes of this lawsuit, who claim that P.L. 44–1994 violates several of their

state and federal constitutional rights. On May 9, 1995, the Tippecanoe Circuit Court declared the statute unconstitutional, finding that it was a local and special law providing for the assessment and collection of taxes for county purposes in violation of Article IV, Sections 22 and 23 of the Indiana Constitution.

The State appealed directly to the Indiana Supreme Court which reversed the trial court and remanded the matter for further proceedings. *State v. Hoovler,* 668 N.E.2d 1229 (Ind.1996), *motion to strike portions of reh'g brief granted,* 673 N.E.2d 767 (Ind. 1997) (*"Hoovler I"*). The supreme court held that P.L. 44–1994 did not violate Article IV, Section 22 because the statute did not provide for the assessment and collection of taxes. *Id.* at 1233. The court further held that, although P.L. 44–1994 was a special law, it did not violate Article IV, Section 23 because it was not amenable to a law of general application. *Id.* at 1235.

The factual background of this case is set forth in the trial court's fifteen findings of fact entered in connection with its first judgment and are quoted fully in *Hoovler I.* 668 N.E.2d at 1231–32. On remand, the trial court entered the following additional finding of fact:

> "16. The only evidence before the Court is that the proceeds of the tax will be used to finance the cleanup of the Tippecanoe County Landfill. However, P.L. 44–1994 does not require the use of the tax revenues collected for substance removal or remedial action at the Landfill, nor does it limit the use of the tax revenues collected to substance removal or remedial action at the Landfill."

*Record* at 122 (as amended nunc pro tunc). The trial court then upheld the constitutionality of P.L. 44–1994 and entered judgment in favor of the State.

---

1. P.L. 44–1994 also permits cities with a population between 5,650 and 5,708 to increase their economic development income tax rate. All of the taxpayers' arguments to the trial court, and all but one of their arguments on appeal, concern the county population classification. Both population classifications have the same effect, that is,

to treat residents of certain localities differently for tax purposes. Thus, while the focus of the taxpayers' arguments, and, hence, the focus of our discussion, is on the county population classification, the same principles apply to the city population classification.

## ISSUES

On appeal, the taxpayers challenge the trial court's conclusion that P.L. 44–1994 does not violate any of the following constitutional provisions:

I.    Article IV, Section 19 of the Indiana Constitution which requires that legislative acts be confined to one subject.

II.    The Fourteenth Amendment to the United States Constitution which guarantees equal protection of the laws.

III.    Article I, Section 23 of the Indiana Constitution which guarantees equal privileges and immunities to Indiana's citizens.

IV.    Article IV, Section 22 of the Indiana Constitution which prohibits special and local laws regulating county business.

V.    Article XI, Section 13 of the Indiana Constitution which prohibits special laws forming corporations.

## STANDARD OF REVIEW

■ "Whether a statute, particularly a tax statute, is wise or expedient is for the legislature to decide, not the courts." *Taxpayers Lobby of Indiana, Inc. v. Orr*, 262 Ind. 92, 97, 311 N.E.2d 814, 816 (1974). When considering the constitutionality of a statute, we accord it every reasonable presumption of validity. *Ledbetter v. Hunter*, 652 N.E.2d 543, 545 (Ind.Ct.App.1995). All doubts are resolved against a challenger who must overcome that presumption by "clearly demonstrating the provision to be invalid." *Hoovler I*, 668 N.E.2d at 1232.

## I. ARTICLE IV, SECTION 19: SINGLE–SUBJECT REQUIREMENT

■ Article IV, Section 19 of the Indiana Constitution provides: "An act, except an act for the codification, revision or rearrangement of laws, shall be confined to one subject and matters properly connected therewith." This constitutional provision is intended to guarantee that there is "some rational unity between the matters embraced in the act."

*In re Estate of Wisely,* 402 N.E.2d 14, 16 (Ind.Ct.App.1980) (quoting *State ex rel. Test v. Steinwedel*, 203 Ind. 457, 468, 180 N.E. 865, 868 (1932) and *Ule v. State*, 208 Ind. 255, 266, 194 N.E. 140, 144 (1935)). "[I]f there is any reasonable basis for grouping together in one act various matters of the same nature, and the public cannot be deceived reasonably thereby, the act is valid." *Stith Petroleum Co. v. Department of Audit and Control,* 211 Ind. 400, 409, 5 N.E.2d 517, 521 (1937).

■ Article IV, Section 19 was included in the Constitution to protect the legislative process against political log-rolling, "where legislators combine two unrelated bills, each without sufficient support to pass on its own, in order to accumulate the requisite number of votes to pass both." *Pence v. State,* 652 N.E.2d 486, 489 (Ind.1995) (Dickson, J., dissenting); *see also Jackson v. State ex rel. South Bend Motor Bus Co.,* 194 Ind. 248, 252, 142 N.E. 423, 424 (1924). We agree with the State that there was no evidence presented or even an allegation made of political log-rolling here. The Record reflects that P.L. 44–1994 was enacted as a unitary bill, not as a combination of two unrelated bills.

Despite the lack of political log-rolling, the taxpayers contend that P.L. 44–1994 violates the single-subject requirement in two respects. First, they argue that P.L. 44–1994 impermissibly combines two separate local laws because it contains two population classifications: one applicable to counties with populations between 129,000 and 130,600, and one applicable to cities with populations between 5,650 and 5,708. Second, the taxpayers argue that P.L. 44–1994 violates the single-subject requirement because it contains provisions that amend Title 6 of the Indiana Code regarding taxation and separate provisions that amend Title 36 regarding local government.

The taxpayers' contentions are based upon an overly strict interpretation of Article IV, Section 19. Our supreme court has given Article IV, Section 19 a much more liberal interpretation as reflected in its recent statement that "[t]he single subject provisions of the Constitution are designed to promote fair practice in legislating without much judicial

intervention." *Bayh v. Indiana State Bldg. and Constr. Trades Council*, 674 N.E.2d 176, 179 (Ind.1996). Such an observation undoubtedly arose from cases in which legislation containing tenuously related subjects has survived a single subject challenge. *See Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 530–32, 418 N.E.2d 207, 213–15 (1981) (upholding constitutionality of legislation combining the Product Liability Act with twenty-eight amendments to Title 33 of the Indiana Code concerning courts and court officers). In conformity with the supreme court's "laissez-faire" approach to single-subject cases, this court has recently upheld legislation combining the reformation of the Indianapolis Public Schools with the State's budget. *Indiana State Teachers Ass'n v. Board of School Commr's of Indianapolis*, 679 N.E.2d 933, 935 (Ind.Ct.App.1997).

The taxpayers' single-subject argument is also based upon an overly technical characterization of P.L. 44–1994. For purposes of Article IV, Section 19, the term "subject" has been held to mean "the thing about which the legislation is had." *Estate of Wisely*, 402 N.E.2d at 16. The thing about which P.L. 44–1994 is had, is the funding of remedial action and substance removal. "Matters" for Article IV, Section 19 purposes are "the incident or secondary things necessary to provide for [the subject's] complete enforcement." *Id.* The matters of P.L. 44–1994 are the authorization of the increased tax and the creation of local governmental bodies to impose such tax. The increased tax is properly connected to the funding of remedial action and substance removal because it is the means to carry out the funding's complete enforcement. The provisions of P.L. 44–1994 are no less unrelated, and are perhaps more related, than legislation that combined the Product Liability Act with amendments to the Indiana Code for courts and court officers, and than legislation combining the reformation of Indianapolis Public Schools with the State's budget. We hold that P.L. 44–1994 satisfies the single-subject requirement found in Article IV, Section 19 of the Indiana Constitution.

## II. FOURTEENTH AMENDMENT: EQUAL PROTECTION

The taxpayers next argue that the classifications created in P.L. 44–1994, both by the population parameters and by a provision limiting the legislation's applicability to qualified sites existing as of July 1, 1994, are not rationally related to any legitimate government interest. Accordingly, argue the taxpayers, P.L. 44–1994 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The State responds that any tax classification made in P.L. 44–1994 has already been determined by the supreme court to be rational, and the taxpayers are bound by the law of the case.

■ The law of the case doctrine "mandates that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and relevantly similar facts." *St. Margaret Mercy Healthcare Centers, Inc. v. Ho*, 663 N.E.2d 1220, 1223 (Ind.Ct.App.1996). The doctrine's purpose is "to minimize unnecessary relitigation of legal issues resolved by an appellate court[.]" *Id.* Relitigation is barred for all issues decided "directly or by implication in a prior decision[.]" *Certain Northeast Annexation Area Landowners v. City of Fort Wayne*, 622 N.E.2d 548, 549 (Ind.Ct.App.1993), *trans. denied.*

■ It is true that the supreme court talked in terms of a rational relationship between classifications made in P.L. 44–1994 and the subject matter of the legislation. *Hoovler I*, 668 N.E.2d at 1234. This discussion, however, was had in connection with the taxpayers' Article IV, Section 23 claim presented in the first appeal. The equal protection issue was not addressed or decided in *Hoovler I*, either directly or by implication. Accordingly, the law of the case doctrine does not apply, and we address the taxpayers' equal protection claim.

■ The equal protection guarantee prohibits states from denying "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. When reviewing a state statute to determine whether it violates the Equal Protection

Clause, the level of scrutiny used depends upon the classification made in the challenged statute. *Clifft v. Indiana Dep't of State Revenue*, 641 N.E.2d 682, 689 (Ind.Tax 1994), *aff'd in part and rev'd in part on other grounds*, 660 N.E.2d 310 (Ind.1995). If the classification involves neither a suspect class nor a fundamental right, the level of scrutiny used is the rational basis test, that is, "the legislation will pass constitutional muster if the classification is 'rationally related to a legitimate government purpose.'" *Id.* (quoting *Pazzaglia v. Review Bd.*, 608 N.E.2d 1375, 1377 (Ind.Ct.App.1993), *trans. denied*).

The taxpayers do not allege that the classifications made in P.L. 44–1994 involve either a suspect class or a fundamental right. Therefore, we examine the legislative classification using the rational basis test.

One of the premises underlying the supreme court's decision in *Hoovler I*, is that Tippecanoe County is in a situation unlike any other Indiana County. 668 N.E.2d at 1235. The trial court also found that the situation regarding the cleanup of Tippecanoe County's landfill was "unique." *Record* at 122 (Finding of Fact No. 13). The presence of a unique situation has been held to justify the use of legislative classifications for tax purposes. In *J & J Vending, Inc. v. Indiana Dep't of State Revenue*, 673 N.E.2d 1203 (Ind.Tax 1996), *trans. denied*, our tax court considered whether the equal protection clause was violated by a classification that subjected vending machine sales to an excise tax from which the sale of identical items in convenience and grocery stores was exempt. The court noted that the purpose of the classification was to aid "the less fortunate among us without foregoing the substantial tax revenue associated with the sale of meals and snacks to the community at large." *Id.* at 1207. By exempting staple items purchased while grocery shopping rather than through a vending machine, the legislation "better target[s] the less well-off" who are more likely to use their "limited resources" to buy such staples and use them over a long period of time, than to purchase "single-serving, prepackaged items." *Id.* at 1208. In holding that the classification was reasonable, the court noted that the equal

protection clause "does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992)). The court determined that because vending machine sales are not in all relevant respects like convenience and grocery store sales, the classification was constitutional. "In the absence of evidence that J & J has been treated differently from other vending machine operators, this Court finds no violation of J & J's federal equal protection guarantees." *Id.*

The same reasoning applies here. Tippecanoe County is not in all relevant respects like any other county in Indiana. It is the only locality in Indiana to have a landfill that the United States Environmental Protection Agency (U.S.E.P.A.) has listed on the U.S. National Priorities List. *Record* at 120 (Finding of Fact No. 5). In addition, "Tippecanoe County is the only county in Indiana where the county and other local governments have been identified by the U.S.E.P.A. as operators of a 'Superfund' site, the Landfill, and, therefore, are potentially responsible parties for the cleanup of the site." *Record* at 121–22 (Finding of Fact No. 11). "The situation regarding the cleanup of the Landfill is unique in that the [potentially responsible parties] are cooperating in the funding of the cleanup." *Record* at 122 (Finding of Fact No. 13). Furthermore, there is no evidence that any Tippecanoe County taxpayer is being treated differently from any other Tippecanoe County taxpayer.

Outside the tax arena, our supreme court has upheld legislation that treated residents of one county differently from residents of other counties for purposes of voting on referenda concerning whether to allow riverboat gambling in the voters' respective communities. *Indiana Gaming Comm'n v. Moseley*, 643 N.E.2d 296 (Ind.1994). In determining that the legislation did not violate principles of equal protection, the supreme court noted that "the state has an interest in ensuring votes to those most affected by the introduction of gambling into their communities." *Id.* at 305.

The State has an analogous interest here. The residents of Tippecanoe County have more potential exposure to Superfund liability than the residents of any other Indiana county because Tippecanoe County is the site of the only identified Superfund site in Indiana and the only one in which local governmental entities have been identified as operators. The State has an interest in limiting that exposure by providing the governmental operators who have been identified as potentially responsible parties with the tools to further their cooperative efforts in the cleanup process. Singling out Tippecanoe County residents to pay a higher tax to guard against the "staggering" cleanup costs that would result from the potentially responsible parties' lack of cooperation is rationally related to that interest. *See Hoovler I*, 668 N.E.2d at 1235. Thus, there is no equal protection violation.

### III. ARTICLE I, SECTION 23: EQUAL PRIVILEGES AND IMMUNITIES

■ Article I, Section 23 of the Indiana Constitution provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." The supreme court has determined that equal privileges and immunities claims brought under Article I, Section 23 are to be analyzed separately from claims brought under the equal protection clause of the Fourteenth Amendment. *Collins v. Day*, 644 N.E.2d 72 (Ind.1994). A Section 23 analysis uses a single standard to determine whether a law violates the Indiana Constitution as opposed to a system of varying degrees of scrutiny depending on whether the classification involves a suspect class or a fundamental right as with a Fourteenth Amendment analysis. *Id.* at 80. That standard consists of two requirements:

> "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated."

*Id.* Courts must employ this standard while giving "substantial deference to legislative discretion." *Id.* The challenger's burden is "to negative every conceivable basis which might have supported the classification." *Id.* (quoting *Johnson v. St. Vincent Hosp., Inc.*, 273 Ind. 374, 392, 404 N.E.2d 585, 597 (1980)).

■ The disparate treatment accorded by P.L. 44–1994 is to permit higher taxes in Tippecanoe County in order to finance remedial action and substance removal. As required by the first step of the *Collins* analysis, this disparate treatment is reasonably related to inherent characteristics which distinguish the taxpayers. As stated above, the taxpayers are residents of the only county in Indiana with a Superfund site for which the county and other local governmental operators have been identified as potentially responsible parties and who are cooperating in the funding of the landfill cleanup. As the trial court found, Tippecanoe County is "unique," a fact that distinguishes its residents from the residents of all other Indiana counties. *Record* at 122 (Finding of Fact No. 13). Furthermore, the higher tax rate is imposed on all Tippecanoe County taxpayers thereby satisfying the second prong of the *Collins* analysis which requires that the disparate treatment be uniformly applicable and equally available to all persons similarly situated. P.L. 44–1994 does not violate Article I, Section 23 of the Indiana Constitution.

### IV. ARTICLE IV, SECTION 22: SPECIAL AND LOCAL LAWS REGULATING COUNTY BUSINESS

The taxpayers contend that P.L. 44–1994 regulates county business in violation of Article IV, Section 22 of the Indiana Constitution. The State contends that the taxpayers' argument is barred by the law of the case doctrine. We agree with the State.

■ As previously stated, the law of the case doctrine bars relitigation of all issues decided directly or by implication in a prior decision. *Certain Northeast Annexation Area Landowners*, 622 N.E.2d at 549. In *Hoovler I*, the supreme court considered whether P.L. 44–1994 contravened Article IV, Section 23 of the Indiana Constitution which requires that in all of the cases falling within any of the sixteen categories listed in

Article IV, Section 22, including cases involving local or special laws regulating county business, and in "all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." Thus, for purposes of determining whether a violation of Article IV, Section 23 had occurred, the court first had to determine whether P.L. 44–1994 fell within any of the Article IV, Section 22 categories. For this purpose, the supreme court determined that "the challenged statute does not fall within any of the categories enumerated in Section 22." *Hoovler I,* 668 N.E.2d at 1234. These categories include special laws regulating county business. Thus, the supreme court directly decided that P.L. 44–1994 does not constitute a special law regulating county business as prohibited by Article IV, Section 22, and we are bound by that decision.[2]

## V. ARTICLE XI, SECTION 13: SPECIAL LAWS FORMING CORPORATIONS

■ The taxpayers finally contend that the provisions of P.L. 44–1994 forming a local environmental response financing board and district unconstitutionally create a corporation in violation of Article XI, Section 13 of the Indiana Constitution which provides that "[c]orporations, other than banking, shall not be created by special Act, but may be formed under general laws." In support of their contention that this constitutional provision has been violated, the taxpayers rely on *Rosencranz v. City of Evansville,* 194 Ind. 499, 143 N.E. 593 (1924), in which our supreme court struck down legislation authorizing the creation of port cities, legislation that applied only to the city of Evansville. The court stated that the creation of a corporation is determined not necessarily by any magic statutory language, but may be implied by the powers conferred on the entity.

"If an act of a legislature confers special powers and privileges upon the residents or inhabitants of a particular district which

cannot be exercised and enjoyed, and the purpose intended by the law carried into effect, without their acting in a corporate capacity, a corporation, to that extent, is created by implication."

*Id.* at 504, 143 N.E. at 595–96.

Despite this language in *Rosencranz,* later cases have upheld the creation of local entities for the purpose of public improvements. *See, e.g., Orbison v. Welsh,* 242 Ind. 385, 179 N.E.2d 727 (1962) (Indiana Port Commission); *Book v. State Office Bldg. Comm'n,* 238 Ind. 120, 149 N.E.2d 273 (1958) (State Office Building Commission); *In re Train Collision at Gary, Ind.,* 654 N.E.2d 1137 (Ind.Ct.App.1995) (Northern Indiana Commuter Transportation District), *trans. denied.* This court has recognized that although the supreme court has extended Article XI, Section 13 to reach municipal corporations, the court has declined to invalidate the creation of boards or commissions in light of the "constitutional framers intent to limit the application of Art. 11, § 13 to private corporations." *Train Collision at Gary,* 654 N.E.2d at 1145 (citing *Ennis v. State Highway Comm'n,* 231 Ind. 311, 108 N.E.2d 687 (1952)). P.L. 44–1994 creates just such a board. The legislation does not violate Article XI, Section 13.

Affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurs as to Parts I, III, and V and concurs in result as to Parts II and IV.

---

**2.** Justice Dickson wrote the lead opinion in which only Justice Selby concurred. Justices Sullivan and DeBruler, however, stated in a concurring opinion that P.L. 44–1994 was a permissible general law. By so stating, Justices Sullivan and DeBruler implied that by virtue of being a general law, P.L. 44–1994 is not a special law. Accordingly, it could not fall within any of the categories of special laws listed in Article IV, Section 22.